288 F.3d 105
 Gail B. WARDEN, in her capacity as Trustee of the Trust established under Deed of Charles Graham Berwind, dated February 28, 1963, for the benefit of David McMichael Berwind, et al., and derivatively on behalf of Berwind Pharmaceutical Services, Inc.; Linda B. Shappy, in her capacity as Trustee of the Trust established under Deed of Charles Graham Berwind, dated February 28, 1963, for the benefit of David McMichael Berwind, et al., and derivatively on behalf of Berwind Pharmaceutical Services, Inc.; David McMichael Berwind, Jr., in his capacity as Trustee of the Trust established under Deed of Charles Graham Berwind, dated February 28, 1963, for the benefit of David McMichael Berwind, et al., and derivatively on behalf of Berwind Pharmaceutical Services, Inc.; David McMichael Berwind, in his capacity as Trustee of the Trust established under Deed of Charles Graham Berwind, dated February 28, 1963, for the benefit of David McMichael Berwind, et al., and derivatively on behalf of Berwind Pharmaceutical Services, Inc., Appellants,
v.
M.B. McLELLAND, in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; C.G. Berwind, Jr., in his capacity as a Director of Berwind Pharmaceutical Services, Inc., and as Trustee of the David Berwind Trust; J.J. Byrne, Jr., in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; J.S. Dulaney, in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; E.F. Kosnik, in his capacity as a Director of Berwind Pharmaceutical Services,
 Inc.; J.L. Hamling, in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; L.C. Karlson, in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; Bruce McKenney, in his capacity as Trustee of the Trust established under Deed of Charles Graham Berwind, dated February 28, 1963, benefit of David McMichael Berwind, et al.; R.M. Cohn, in his capacity as a Director of Berwind Pharmaceutical Services, Inc.; Berwind Group Partners; Berwind Corporation.
 
 No. 00-1364.
 United States Court of Appeals, Third Circuit.
 Argued January 18, 2002.
 Filed April 30, 2002.
 Steven L. Friedman (Argued), Dilworth Paxson, Philadelphia, PA, for Appellants.
 Marc J. Sonnenfeld (Argued), Morgan, Lewis & Bockius, Philadelphia, PA, for Appellees.
 Before SCIRICA and ROSENN, Circuit Judges, and KANE, District Judge.*
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 This is a dispute between two brothers over ownership and control of a pharmaceutical company. The complaint alleges, inter alia, breach of trust, breach of fiduciary duty to the corporation, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The District Court granted defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). We will reverse and remand.
 
 I.
 
 2
 Plaintiffs/appellants[1] are trustees of a trust established for the benefit of David Berwind, who himself is one of the trustees. The David Berwind Trust was established in 1963 by David's father, Charles Berwind. At the same time, trusts were created for each of David's three siblings. The principal asset of each trust was stock in the Berwind Corporation, a successful diversified corporation controlled by Charles Berwind. Each of the trusts was assigned three trustees: the beneficiary, an attorney, and Graham Berwind, one of the four children. In addition to being trustee of each trust, Graham Berwind was most directly involved in the operation of the family business. His trust received a somewhat larger share of the Berwind Corporation stock (53,200 shares to 45,600 for each of his siblings' trusts).
 
 
 3
 Following the death of Charles Berwind in 1972, Graham Berwind began to consolidate ownership of the Berwind Corporation by arranging for the company to purchase all of the shares held by the two other siblings' trusts. A few years later, the David Berwind Trust sold half of its shares to the corporation. Because Graham Berwind was a trustee of each trust, he obtained approval for the transactions from the Orphans' Court of Montgomery County, Pennsylvania.
 
 
 4
 In 1978, Berwind Corporation acquired Colorcon, Inc., a producer of pharmaceutical coatings. Colorcon was absorbed into the newly created Berwind Pharmaceutical Services, Inc. ("BPSI"). Berwind Group Partners, a trust partnership established for the benefit of Graham Berwind and his family, held 83.6% of the shares in BPSI. The David Berwind Trust received the remaining 16.4%. In 1985, the David Berwind Trust sold its remaining shares in Berwind Corporation to Berwind Group Partners. But the David Berwind Trust still owned 16.4% of BPSI, its last holding in any of the Berwind companies. These shares are at the center of the current dispute.
 
 
 5
 In 1993, Graham Berwind made the first of several attempts to buy his brother's trust's stock in BPSI, offering $29 million. Four years later, he offered $53 million. On both occasions, David Berwind refused because Graham Berwind had allegedly provided insufficient financial information to assess the value of the stock. Shortly thereafter, Graham Berwind took actions to resign as trustee of the David Berwind Trust. According to the complaint, however, he did not comply with all of the requirements for resigning. Consequently, plaintiffs allege Graham Berwind remained a trustee, and continues in this capacity.
 
 
 6
 In August 1999, according to plaintiffs, Graham Berwind's attempt to obtain full control of BPSI intensified. Berwind Corporation's president, Edward Kosnik, sent David Berwind a letter threatening that in the event David Berwind continued to reject his brother's offers, "we are prepared to start a process that will result in our ownership of 100% of BPSI at a price to be determined by us and our financial advisor. This will be a costly, time-consuming and legalistic process that we would prefer to avoid, but one that we are prepared to undertake, if necessary."
 
 
 7
 In response, David Berwind retained attorneys and advisors to negotiate the sale of his shares of BPSI. But their attempts to obtain the information necessary to proceed with the sale were allegedly rebuffed. Plaintiffs brought this suit on November 22, 1999. Defendants were served with the complaint on December 9, 1999.
 
 
 8
 Six days later, BPSI's Board of Directors approved a "squeeze-out" merger. The result of this maneuver was that BPSI emerged as a corporation wholly owned by Berwind Group Partners. Having lost its status as shareholder, the David Berwind Trust was offered a note worth $82,820,000. The Trust also obtained the right to seek judicial appraisal of the fair value of its shares, should it view the note as inadequate. An appraisal hearing was initiated in Philadelphia Common Pleas Court and is proceeding during the pendency of this appeal.
 
 
 9
 Plaintiffs allege that, prior to the BPSI "squeeze-out" merger, Graham Berwind engaged in several transactions that caused the unlawful transfer of value from BPSI to Berwind Group Partners and other Berwind entities. The result was to deplete the value of the David Berwind Trust's holdings while increasing benefits to Graham Berwind.
 
 
 10
 Five of the thirteen counts in the amended complaint are brought on behalf of BPSI. The other eight are brought on behalf of the David Berwind Trust. Plaintiffs primarily allege: that Graham Berwind breached his duty of loyalty to the David Berwind Trust; that defendants violated RICO with schemes to defraud the trust; that the BPSI directors breached their fiduciary duty of loyalty to the corporation; and that the directors diverted corporate opportunities.
 
 
 11
 On April 25, 2000, the District Court granted defendants' motion to dismiss. In doing so, the Court only provided the following explanation:
 
 
 12
 The Court approves and adopts Defendants' Motion to Dismiss Plaintiff's [sic] Amended Complaint (Docket No. 12), Defendants' Reply Memorandum in Support of Motion to Dismiss (Docket No. 19), and Defendant's [sic] Supplemental Reply Memorandum in Support of Defendants' Motion to Dismiss (Docket No. 20) which collectively set forth the legal authority which is dispositive of Plaintiffs' cause of action.
 
 
 13
 Warden v. McLelland, No. 99-5797, at 2 (E.D.Pa. Apr.25, 2000).
 
 
 14
 Plaintiffs appealed. We vacated the District Court's judgment and "remanded to the District Court for it to provide this Court with an opinion setting forth the legal reasoning as to its decision to grant the motion to dismiss." Warden v. McLelland, 250 F.3d 737, No. 00-1364, at 3-4 (3d Cir. Feb. 23, 2001) (judgment). We did so because we could not "perform our appellate review responsibly without the District Court first performing its function in its entirety." Warden v. McLelland, 250 F.3d 737, No. 00-1364, at 7 (3d Cir. Feb. 23, 2001) (slip op.).
 
 
 15
 On remand, the District Court issued an opinion that was a minimally modified version of one of defendants' legal memoranda the District Court had previously listed as setting forth the legal authority for its prior order. Rather than seeking further clarification, we turn to the merits of the appeal.[2]
 
 II.
 
 16
 Because this is an appeal from a dismissal under Rule 12(b)(6), we accept the factual allegations in the complaint. We may affirm only if it is certain no relief could be granted under any set of facts that could be proven. Rossman v. Fleet Bank (R.I.) N.A., 280 F.3d 384, 387 n. 1 (3d Cir.2002). This standard is especially important here because the District Court adopted defendants' version of the facts.
 
 III.
 
 17
 
 a. Breach of Trust.
 
 
 
 18
 Plaintiffs allege Graham Berwind and his associate Bruce McKenney, who was also named as a trustee of the David Berwind Trust, breached their duties to the trust owed by virtue of their positions as trustees.
 
 
 19
 Defendants contend these claims fail for two reasons. First, they maintain they were not trustees at the relevant times, as they had resigned. As noted, plaintiffs allege these defendants had not effectively resigned as trustees. At this stage, we must accept the complaint's allegations as true, so this proposed basis for dismissal fails. Second, defendants point to a provision of the Deed of Trust that provides:
 
 
 20
 The fact that any trustee may be interested in Berwind Corporation or any of its subsidiaries as director, stockholder, manager, agent or employee shall not constitute an adverse or conflicting interest, and the acts of such trustee shall be judged as if he had no interest in the Corporation.
 
 
 21
 This provision, however, cannot fairly be read to permit trustees to engage in self-dealing or otherwise to act fraudulently or in bad faith with respect to a beneficiary of the Trust. We need not determine the precise extent of the protections afforded by this provision to conclude that it is consistent with plaintiffs' allegations that the trustees acted outside the provision and may have breached a duty owed to the trust and its beneficiaries. Therefore, we will reverse with respect to plaintiffs' breach of trust claims and leave the precise effect of the exculpatory provision for the District Court to consider on remand.
 
 
 22
 
 b. Derivative Claims.
 
 
 
 23
 Five of plaintiffs' thirteen counts are brought derivatively on behalf of BPSI. Two are RICO claims; the other three arise under Pennsylvania corporate law and include diversion of corporate opportunity and breach of fiduciary duty of loyalty to the corporation. Defendants contend plaintiffs have not complied with the procedural requirements for bringing shareholder-derivative lawsuits.
 
 
 24
 Under Pennsylvania law,[3] a shareholder cannot ordinarily bring an action on behalf of the corporation without first making demand on the board of directors to pursue the action. Cuker v. Mikalauskas, 547 Pa. 600, 692 A.2d 1042, 1049-50 (1997). In Cuker, the Pennsylvania Supreme Court expressly adopted several sections of the American Law Institute's Principles of Corporate Governance, including the section setting forth the demand requirement. Section 7.03(b) provides, "Demand on the board should be excused only if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of the action." Id. at 1050. Prior to Cuker, "[s]ufficient averments of fraud excused a demand based upon its futility." Drain v. Covenant Life Ins. Co., 551 Pa. 570, 712 A.2d 273, 278 (1998). But "Cuker, which established that a demand is excused only if irreparable harm to the corporation is shown, changed the law on demand requirements in derivative actions." Id.
 
 
 25
 It is undisputed that plaintiffs did not make demand on the board of directors of BPSI either before filing suit or thereafter. But they contend they should be excused from the demand requirement because of the catch-22 they allegedly faced.
 
 
 26
 To have standing to bring a derivative action, one must be a shareholder, both at the time of the alleged wrongdoing and continuing to judgment. Cuker, 692 A.2d at 1050 (adopting § 7.02 of the ALI Principles). This requirement may be excused, however, where "the failure to do so is the result of corporate action in which the holder did not acquiesce, and ... the derivative action was commenced prior to the corporate action terminating the holder's status...." Id.
 
 
 27
 Plaintiffs brought suit on November 22, 1999. Making a prior demand, they contend, would have foreclosed their opportunity to bring this action. Defendants would have responded, plaintiffs maintain, by immediately squeezing out the David Berwind Trust, depriving it of standing to bring derivative claims. As noted, BPSI's board of directors effected the "squeeze-out" merger only one week after being served with the complaint.
 
 
 28
 Although plaintiffs may have properly pled futility in making a prior demand, Pennsylvania law no longer recognizes a futility exception. But Pennsylvania law permits a plaintiff to bring derivative claims if irreparable harm to the corporation would result. Plaintiffs contend they fall within this exception.
 
 
 29
 In their complaint, plaintiffs allege, "Demand on the board of directors of BPSI to bring the derivative claims asserted herein is excused because the David Berwind Trust and BPSI would suffer irreparable injury if demand were required to be made upon the board of directors." Although the complaint lacks specificity, we think it sufficiently supports an inference of irreparable harm to the corporation. Any harm to the corporation suffered as a result of the merger would be effectively irreparable for these purposes. Because only those responsible for the corporation's alleged losses remained as shareholders following the elimination of the David Berwind Trust as shareholder, the "squeeze out" would have effectively defeated the action, depriving the corporation of any possibility of recovering the losses. The immediate elimination of the David Berwind Trust's interest in BPSI, in other words, may have irreparably damaged BPSI just as it would have irreparably harmed the trust. For purposes of a Rule 12(b)(6) motion, these allegations are sufficient.
 
 
 30
 Even where demand is excused for threat of irreparable harm to the corporation, the ALI Principles state "demand should be made promptly after commencement of the action." § 7.03(b); adopted by Cuker, 692 A.2d at 1050. As noted, BPSI's board of directors squeezed out the David Berwind Trust within weeks of filing the lawsuit. No longer a shareholder, the David Berwind Trust was no longer in a position to make demand on the board — by no fault of its own. Although there appeared to have been a brief window of time in which plaintiffs could have made a demand (which would have been the preferable course), their failure to do so, demand having been made impossible by action of the board, is not fatal to their derivative claims.
 
 
 31
 Plaintiffs also contend they should not have been required to make demand by virtue of an exception contained in section 7.01(d) of the ALI Principles. Section 7.01 was not among those adopted by the Pennsylvania Supreme Court in Cuker. In that case, however, the Supreme Court invited Pennsylvania courts to adopt other provisions of the ALI Principles:
 
 
 32
 Our adoption of these sections is not a rejection of other sections not cited. We have identified and studied the sections which apply to this case and have adopted those which appear most relevant.
 
 
 33
 The entire publication, all seven parts, is a comprehensive, cohesive work more than a decade in preparation. Additional sections of the publication, particularly procedural ones due to their interlocking character, may be adopted in the future. Issues in future cases or, perhaps, further proceedings in this case might implicate additional sections of the ALI Principles. Courts of the Commonwealth are free to consider other parts of the work and utilize them if they are helpful and appear to be consistent with Pennsylvania law.
 
 
 34
 692 A.2d at 1049 n. 5.
 
 
 35
 Plaintiffs contend the Pennsylvania Supreme Court would adopt section 7.01 because it interlocks with the adopted sections, it is helpful, and it is consistent with Pennsylvania law. Section 7.01(d) provides:
 
 
 36
 In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.
 
 
 37
 BPSI is a closely held corporation.[4] Were Pennsylvania to adopt section 7.01(d), the District Court here would have discretion to treat this case as an individual action, exempt from the procedural requirements for derivative actions. Because the David Berwind Trust was the only minority shareholder, there is no apparent reason that doing so would invite multiple actions, materially prejudice the interests of creditors or the corporation, or interfere with a just recovery. Therefore, this case would seem to be a good candidate for such treatment, were section 7.01(d) to apply.
 
 
 38
 There are only three Pennsylvania cases addressing section 7.01(d), each from trial courts. All have adopted the provision.[5] Liss v. Liss, No.2063, 2002 WL 576510 (Pa.Ct.C.P.Phila. Mar.22, 2002); Baron v. Pritzker, 52 Pa. D. & C.4th 14, 26-27 (Pa.Ct.C.P.Phila.2001) (excusing demand by treating corporate waste claim as individual one); Levin v. Schiffman, 54 Pa. D. & C.4th 152, 167 (Pa.Ct.C.P.Phila.2000) (adopting section 7.01(d) and "exercis[ing] its discretion and treat[ing] all of [plaintiff's] `derivative' claims ... as direct claims for which demand is not required"). Accord Audio Visual Xperts, Inc. v. Walker, No. 17261-NC, 2000 WL 222152, at *2 (Del.Ch. Feb.18, 2000) (predicting Pennsylvania Supreme Court would adopt section 7.01(d)).
 
 
 39
 There are good reasons to believe the Pennsylvania Supreme Court would concur and adopt section 7.01(d). As noted, it invited lower courts to adopt other sections, especially those, like section 7.01(d), that "interlock[ed]" with the sections adopted in Cuker, all of which govern the prosecution of derivative claims. Section 7.01 addresses the classification of a case as a derivative or individual action. The adoption of section 7.03 made the demand requirement substantially stricter by narrowing the available exceptions. But the ALI adopted that provision in light of section 7.01, which allows certain cases to avoid that requirement. Thus, the close corporation exception closely interlocks with section 7.03. Consequently, the Pennsylvania Supreme Court's invitation to adopt other sections seems particularly appropriate here.
 
 
 40
 Defendants argue 7.01(d) contravenes Pennsylvania law. In particular, they cite section 1717 of the Pennsylvania Business Corporations Law ("B.C.L."), 15 Pa. Cons. Stat. § 1717, entitled "Limitation on Standing." It provides, in part:
 
 
 41
 The duty of the board of directors, committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.
 
 
 42
 Because suits brought alleging directors' failure to meet the standard of care owed to the corporation cannot "be enforced directly by a shareholder," defendants contend application of section 7.01(d) would directly contradict this provision. For this reason, they contend, section 7.01(d) is inconsistent with Pennsylvania law, and would not likely be adopted by the Pennsylvania Supreme Court.
 
 
 43
 While this argument has force, we do not see defendants' conclusion as inevitable. It is not obvious that a court's "treating" a case as an individual one represents such a fundamental change in the underlying character of the lawsuit such that it is barred by section 1717 of the B.C.L. And even if so, the Pennsylvania Supreme Court might decide to adopt section 7.01(d) only to the extent it creates exceptions to the procedural requirements of derivative actions. Cf. Baron, 52 Pa. D. & C.4th at 26 ("Section 7.01(d) sets forth the basis for a second exception to the demand requirement.").
 
 
 44
 Furthermore, the most recent Pennsylvania case discussing section 7.01(d) expressly rejected the argument asserted by defendants on the effect of section 1717 of the B.C.L. in a case also involving a dispute between brothers over ownership and control of a closely held corporation. Liss, 2002 WL 576510, at *3-10. The court held certain kinds of claims that would otherwise be derivative can be treated as direct claims under certain circumstances notwithstanding the limitation on standing provided by section 1717.
 
 
 45
 Because there may be some lingering uncertainty over the adoption of section 7.01(d) and the appropriateness of applying it in this case, we think this issue is best left unresolved at this point. The District Court, on remand, should consider this issue if it proves to be necessary. This matter was not briefed extensively and this will provide the parties with a chance to do so in light of the recent statements of Pennsylvania courts.
 
 
 46
 
 c. RICO claims.
 
 
 
 47
 Plaintiffs have stated three counts for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. The complaint describes a scheme to defraud the David Berwind Trust and its trustees over several years.
 
 
 48
 To establish a RICO claim, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The statute defines racketeering by a list of criminal activities that constitute predicate acts for purposes of RICO. Among these predicate acts are mail fraud and wire fraud, the predicate acts plaintiffs have alleged here. See 18 U.S.C. § 1961(a). A RICO claimant must establish a "pattern" of such predicate acts, and demonstrate the scheme caused injury.
 
 
 49
 Defendants contend plaintiffs have failed to plead proper RICO claims. In particular, defendants argue plaintiffs failed to properly allege a causal relationship between the alleged RICO violations and their injuries, sufficient continuity to constitute a "pattern," reliance on fraudulent acts, and fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b).[6] Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 657-58 (3d Cir.1998).
 
 
 50
 The complaint lists several particular communications allegedly constituting acts of wire fraud. But the complaint does not state clearly how these or any other communications were false or misleading, or how they contributed to the alleged fraudulent scheme. On the other hand, the complaint does provide a reasonably clear overall picture of what has been alleged.
 
 
 51
 We believe this issue, along with the other RICO pleading issues, is best resolved by reexamination of the sufficiency of the complaint by the District Court. We are confident the District Court will permit plaintiffs to amend their complaint if appropriate. See Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given"); Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 209 (3d Cir.2001) ("Unless the opposing party will be prejudiced, leave to amend should generally be allowed.") (quoting Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir.1991)). The District Court will be able to consider these issues in light of any amendments it permits, something we are in no position to do.
 
 
 52
 
 d. Statute of Limitations.
 
 
 
 53
 Defendants contend the state law claims for breach of fiduciary duty are wholly or partially barred by Pennsylvania's applicable two-year statute of limitations. Plaintiffs acknowledge that some of the events occurred more than two years before they brought suit. But they contend the statute of limitations should be tolled because defendants fraudulently concealed information necessary for recognizing these claims.
 
 
 54
 This is a factual issue that cannot be resolved at this time. Nevertheless, defendants contend plaintiffs have failed to meet specific requirements for pleading such tolling. These matters are better addressed by the District Court in light of any amendments to the pleadings.
 
 
 55
 
 e. Equitable Relief.
 
 
 
 56
 Even were plaintiffs to prevail, defendants contend they would not be entitled to equitable relief, because the only post-merger remedy is an appraisal of the value of the shareholder's prior stake in the company. Defendants cite In re Jones & Laughlin Steel Corp., 488 Pa. 524, 412 A.2d 1099 (1980), as support for this proposition. But in Jones & Laughlin, equitable relief was sought after the merger had occurred. Here the merger occurred after plaintiffs had initiated this action, a critical distinction. See id. at 1104 ("[O]ur cases recognize[ ] the right of shareholders to enjoin proposed unfair or fraudulent corporate actions. In each case where this power was exercised it was in an action in equity instituted prior to the consummation of the proposed transactions.") (citations omitted). The District Court's reliance on Jones & Laughlin to dismiss these counts, therefore, was erroneous.
 
 
 57
 Defendants also contend plaintiffs have alleged no irreparable harm and have an adequate remedy at law. But the Pennsylvania Supreme Court has permitted equitable claims along with appraisal remedies where a merger is "fraught with fraud or fundamental unfairness." Id. at 1103. To the extent defendants contend that plaintiffs have insufficiently pled fraud or fundamental unfairness, we leave this matter to the District Court in the first instance.
 
 
 58
 Defendants further argue that even if appraisal is not always the only remedy available following mergers, it is the only remedy available — absent extraordinary circumstances — in the context of a short-form merger. The Pennsylvania B.C.L. permits corporations to eliminate minority shareholders without formal shareholder approval when the controlling shareholder controls at least eighty percent of the company's shares. 15 Pa. Cons.Stat. § 1924(b)(1)(ii). Defendants note the Delaware Supreme Court has eliminated the "entire fairness" requirement applicable to long-form mergers. Glassman v. Unocal Exploration Corp., 777 A.2d 242, 248 (Del. 2001). One effect of this holding is that appraisal is the only remedy available to minority shareholders eliminated by short-form mergers "absent fraud or illegality." Id. Defendants insist that because the Pennsylvania B.C.L. was modeled on Delaware law, we should interpret Pennsylvania law in the same way.
 
 
 59
 We express no opinion whether Pennsylvania would follow Delaware law on this point. Nor do we think it prudent to assess whether plaintiffs have sufficiently alleged "fraud or illegality" to survive summary judgment under the Delaware standard, should it apply. The District Court did not specifically address this matter. We leave it to the District Court to consider, if necessary.
 
 
 60
 Nevertheless, we note this case has special features that may require that it be treated differently from standard short-form merger cases. This is not simply a dispute between a majority and a minority shareholder in a corporation. Here the majority shareholder was allegedly controlled by Graham Berwind, who was also an alleged trustee of the David Berwind Trust. And Berwind company[7] stock was the central holding of the Trust as set up by Charles Berwind. Thus, Graham Berwind's duty to the trust was not simply that owed by a majority shareholder to a minority shareholder, but also a duty owed directly to a trust designed to hold equity in the family business. In these circumstances, the argument in favor of equitable remedies would appear to take on a different character from that of a case focused only on a short-form merger. The resolution of these matters is best reserved for the District Court at this juncture.
 
 
 61
 
 f. Remaining Claims.
 
 
 
 62
 There are other arguments made by parties. But many seem to have been abandoned; others are clearly ancillary to other arguments or other claims. These remaining issues are best resolved by the District Court in the context of its reexamination of the central issues in the case. Accordingly, we will vacate the remainder of the District Court's opinion.
 
 IV.
 
 63
 For the forgoing reasons, we will reverse the dismissal under Federal Rule of Civil Procedure 12(b)(6) and remand the case to the District Court for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 Gail Warden, Linda Shappy, David Berwind, and David Berwind, Jr. are named as plaintiffs
 
 
 [2]
 Despite plaintiffs' request for reassignment to another district judge on remand, we are confident the able trial judge will give this difficult and important case the attention it demands
 
 
 [3]
 In determining the scope of the demand requirement and its exceptions, we apply the law of the state of incorporationGarber v. Lego, 11 F.3d 1197, 1201 (3d Cir.1993). BPSI is a Pennsylvania corporation.
 
 
 [4]
 It appears that the David Berwind Trust and the Berwind Group Partners were the only shareholders prior to the merger
 
 
 [5]
 Recently, a Pennsylvania trial court again discussed the possibility of applying section 7.01. The court declined to treat that case as a direct action, but apparently accepted its authority to do soMogilyansky v. Sych, 2002 WL 372950, at *1 n. 2 (Pa.Ct.C.P.Phila., Feb. 4, 2002) ("[T]here is no indication that the conditions for allowing a direct action have been met and the circumstances surrounding this case do not convince the Court to exercise its discretionary authority to allow [plaintiff] to proceed as an individual in a direct action.").
 
 
 [6]
 Of course, with limited exceptions, pleading is subject to the notice pleading rules of the Federal Rules of Civil Procedure, which require "only a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Such a statement must simply `give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"Swierkiewicz v. Sorema N. A., 534 U.S. 506, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). By contrast, the Federal Rules subject fraud claims to a heightened pleading standard: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).
 
 
 [7]
 Defendants contend the minority shareholder's status as a trust is irrelevant to the analysis, because BPSI derived from Colorcon, Inc., which was acquired fifteen years after the formation of the trust. We find this argument unconvincing. BPSI was a Berwind family corporation and the David Berwind Trust's ownership of shares in BPSI arose from its ownership of the Berwind Corporation stock originally held by the trust