Donald F. ST. CLAIR, Appellant

v.

CITIZENS FINANCIAL GROUP; RBS Citizens, N.A.; Citizens Bank of Pennsylvania; Charter One Financial Services; Lawrence K. Fish; Stephen D. Steinour; Norman J. Deluca; Dana Drago; Robert M. Mahony; Ben Barone; Laird Boulden; Robert M. Curley; Joe Dewhirst; Christopher Y. Downs; Edward O. Handy; Bradford B. Kopp; Joseph J. Marcaurele; Theresa McLaughlin; Ralph J. Papa; Sandra Pierce; Edwin Santos; Cathleen A. Schmidt; Scott C. Swanson; Maria Tedesco; Hal R. Tovin; Unknown and Unnamed Defendants;

Robert E. Smyth.

No. 08–4870.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a).

Opinion filed: July 23, 2009.

Donald F. St. Clair, Marlton, NJ, pro se.

Danielle Banks, Esq., Robin Watkins, Esq., Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Defendants.

Before: BARRY, SMITH and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Donald St. Clair, proceeding pro se, appeals the order of the United States District Court for the District of New Jersey granting the defendants' motion to dismiss his complaint without granting him leave to amend his complaint a second time. For the reasons that follow, we will affirm.

## I.

As we write solely for the benefit of the parties, we set forth briefly only those facts necessary to our analysis. Donald St. Clair and his now deceased mother opened a Citizens Bank checking account in Connecticut, had Social Security checks automatically deposited into the account from the time it was opened until January 2007, and kept the account in use even after he moved to New Jersey at an unspecified date.

In March 2008, St. Clair sued Citizens Financial Group, its parent corporation,

RBS Citizens, N.A., several of its banks, and numerous officers and executive committee members of those entities (collectively, "Defendants") in the District Court for the District of New Jersey after incurring fees for overdrawing his Citizens Bank checking account.

According to St. Clair, his account was a mere $2.87 overdrawn, yet he incurred $441 in penalties under Citizens Bank's overdraft policy before he was even notified of the deficiency.[1] In addition to claiming that the bank deceptively hides its fees from its customers, St. Clair alleged that it was fraudulent for the bank to have waited approximately four to six days to mail his overdraft notices, given that the overdraft fee grows each day the account remains overdrawn.

After the Defendants filed a motion to dismiss, St. Clair responded with a 57–page amended complaint on July 7, 2008. There, he alleged that the overdraft fees had been falsely inflated because of the Defendants' monopolization of the market or, alternatively, as a result of a conspiracy between Defendants and various "unknown person conspirators of competitor banks and/or bank enterprises."

St. Clair asserts two general claims and multiple subclaims against the Defendants stemming from the overdraft policies: (1) the Defendants illegally conspired to fix the fees in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 and the New Jersey Antitrust Act, § 56:9–3; and (2) the Defendants used mail fraud, bank fraud, and extortion to force him to pay the overdraft fees in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–63.

In support of the conspiracy claims, St. Clair provides the overdraft fee structures of several competing banks which appear to be similar to Citizens Bank's fee structure and further notes that several of the individual Defendants, Citizens Bank officers, have prior work experience at other banks with similar overdraft fee structures, thereby giving them opportunity to enter into a conspiracy.

Upon Defendants' second motion to dismiss, the District Court concluded that St. Clair failed to state a claim upon which relief could be granted and dismissed the complaint without giving St. Clair leave to amend a second time. This appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and conduct *de novo* review of the District Court's dismissal pursuant to Rule 12(b)(6). *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir.2008). We accept as true all of the allegations contained in the complaint and draw reasonable inferences in favor of a pro se plaintiff. *Id.* at 231; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

---

1. According to Appellant, in 2006, the bank charged $17 per item for the first overdraft day, $30 per item for the second and third overdraft days, $37 per item if the account was overdrawn for four days or more, and a $5 "Sustained Overdraft Fee" if an account remained overdrawn for more than six consecutive business days. Appellant claims the overdraft fee structure changed in 2007 to $35 per item for the first, second, and third overdraft days, and $38 per item for four or more overdraft days. The "Sustained Overdraft Fee" was apparently increased to $35.

550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## III.

St. Clair advances four antitrust claims. First, he claims that the Defendants violated Section One of the Sherman Antitrust Act by colluding with other banks to illegally set overdraft fees beyond fair market rates. Next, he alleges that the artificially inflated overdraft fees are only possible because Defendants monopolize the banking market in violation of Section Two of the Sherman Antitrust Act. His final two antitrust claims are matching state law claims pursuant to the New Jersey Antitrust Act, N.J. Stat. Ann. §§ 56:9–3, –4.[2]

To state a claim under either Section 1 of the Sherman Act or the New Jersey Antitrust Act § 56:9–3, a complainant must allege that two or more entities formed a combination or conspiracy. *Twombly*, 550 U.S. at 548, 127 S.Ct. 1955; *Patel*, 848 A.2d at 827. In *Twombly*, the Supreme Court held that general allegations of conspiracy are not sufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The complaint must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556, 127 S.Ct. 1955. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id.* Furthermore, "[w]ithout more, parallel conduct does not suggest conspiracy,

and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556–57, 127 S.Ct. 1955.

■ As in *Twombly*, St. Clair's conspiracy claims fail because he too has alleged only parallel conduct and gross speculation. His conspiracy claims rely on the parallel fee structures of several competing banks and the assertion that the individual defendants, officers of Citizens Bank, each had prior work experience at other banks. These accusations are wholly inadequate.

■ St. Clair also alleges that the Defendants and the co-conspiring banks monopolize the market as an oligopoly, illegally control 100 percent of the market share, and use this advantage to set overdraft fees artificially high. As the District Court correctly noted, to state a claim of monopolization in contravention of Section 2 of the Sherman Act and its analog, the New Jersey Antitrust Act § 56:9–4, a plaintiff must allege:

(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

---

**2.** We agree with the District Court that St. Clair's allegations are sufficient to confer standing, as he alleged the type of harm the antitrust laws were intended to prevent and a personal injury stemming from the Defendants' alleged unlawful acts as required by *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993). *See also Angelico v. Lehigh Valley Hospital, Inc.*, 184 F.3d 268, 274 (3d Cir. 1999).

We also note, as did the District Court, that the language of the relevant portions of the

New Jersey Antitrust Act is virtually identical to that of the Sherman Antitrust Act and that the New Jersey Act itself mandates that it "shall be construed in harmony with the ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it." N.J.S.A. 56:9–18; *Patel v. Soriano*, 369 N.J.Super. 192, 848 A.2d 803, 826 (N.J.Super.Ct.App.Div., 2004). Accordingly, the state law antitrust claims are only viable if the corresponding federal claims are sufficient.

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.,* 159 F.3d 129, 141 (3d Cir.1998) (quotations omitted); *see also Patel,* 848 A.2d at 829–30. The Supreme Court has defined monopoly power as the power to "control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 392, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). "Other factors to be considered include the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-competitive conduct, and the elasticity of consumer demand." *Barr Labs., Inc. v. Abbott Labs.,* 978 F.2d 98, 112 (3d Cir.1992) (citation omitted).

The District Court determined, and we agree, that St. Clair has failed to allege the percentage of the relevant market controlled by Defendants or plead any facts regarding the strength of competition, probable development of the industry, the nature of the anticompetitive conduct, or the elasticity of consumer demand. The District Court did acknowledge that St. Clair stated that the Defendants "effectively barricaded entry into the market," but noted that the pleading was too conclusory to be sufficient under *Twombly,* 550 U.S. at 554, 127 S.Ct. 1955 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted).

Instead of addressing the factors above, St. Clair cited Citizens Bank's overdraft fee increase of $18 in 2007 as evidence of Defendants' power over the market, emphasized Citizens Financial Group's $159 billion in assets, declared that it was one of the "10 largest commercial bank holding companies in the United States," and of-fered *Swift & Co. v. United States,* 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905), as supporting authority. *Swift,* however, was decided in another era of antitrust law and pleading practice. Furthermore, the *Swift* plaintiff provided great detail regarding the formal price fixing agreement between the conspirators and outlined the agreement's intent and effect of eliminating competition. This has not been sufficiently pleaded here and the allegations in the complaint are not sufficient to support a monopolization claim

We turn now to St. Clair's RICO claims. To properly assert a civil RICO claim a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir.2002) (quotation omitted). Section 1961(1) of RICO defines "racketeering activity" by listing criminal activities that constitute predicate acts under the statute. The list is exhaustive. *Annulli v. Panikkar,* 200 F.3d 189, 200 (3d Cir.1999), *overruled on other grounds by Rotella v. Wood,* 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

Failure to plead a pattern of predicate acts is fatal to a RICO claim. *Id.* St. Clair alleged four predicate acts: (1) antitrust violations; (2) bank fraud; (3) mail fraud; and extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. We consider each of St. Clair's proffered "predicate acts." At the outset, we note that antitrust violations are not on the list of predicate acts in 18 U.S.C. § 1961(1), and thus, cannot be the basis of a RICO claim. We also note that while bank fraud is listed as one of the predicate acts, bank fraud occurs when someone defrauds the bank, not vice versa. *See United States v. Khorozian,* 333 F.3d 498, 503 (3d Cir.2003). St. Clair's accusations therefore do not constitute allegations of bank fraud, because he alleges the bank is the perpetrator of the fraud not the victim.

Next, St. Clair claims that the Defendants committed mail fraud by sending overdraft notices later than they sent other types of mail, knowing that late fees accrue on a daily basis. To constitute mail fraud, one must allege the postal system's use in a scheme to defraud through misrepresentation. *United States v. Boffa,* 688 F.2d 919, 925 (3d Cir.1982). "While innocent mailings ... may supply the necessary communication element for these criminal offenses, there must be some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Camiolo v. State Farm Fire & Cas. Co.,* 334 F.3d 345, 364 (3d Cir.2003) (internal quotation marks omitted). Like the District Court, we conclude that St. Clair has not met this burden as we cannot find any allegations in the amended complaint that the Defendants misrepresented any details regarding the overdraft fees in any of the communications mailed to him.

St. Clair finally claims the RICO Act is triggered because Defendants used extortion to collect the overdraft charges in violation of the Hobbs Act, 18 U.S.C. § 1951. Subsection (b)(2) of the Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." In order to plead extortion under color of official right, one must allege that the Defendant misused official government power or threatened to misuse that power in order to obtain something of value from the victim. *United States v. Mazzei,* 521 F.2d 639, 643 (3d Cir.1975). The Defendants, however, are not state actors. They are not listed as financial institutions in 31 U.S.C § 9101, which St. Clair cites to us, as government corporations or mixed-ownership Government Corporations. We do not see how St. Clair's accusations support a viable extortion claim. As a consequence, we do not see any basis for St. Clair's RICO claims.

Finally, we see no basis to conclude that the District Court erred in refusing St. Clair leave to amend his complaint a second time. Although Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend the complaint] when justice so requires," a district court may deny a request to amend if the amendment would be futile. *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000). In concluding that further amendment would be futile, the District Court explained that St. Clair filed 123 pages of pleadings, a case statement, and a brief in opposition to the motion to dismiss. The District Court did not abuse its discretion in determining that the deficiencies in St. Clair's amended complaint could not be cured by amendment.

## IV.

In light of the foregoing, we will affirm the judgment of the District Court.