NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2853
_____

CARYN GRATZ,

Appellant

v.

KEREY RUGGIERO; DONNA MORAN; PHILADELPHIA MENTAL HEALTH
CLINIC, INC., doing business as PHILADELPHIA MENTAL HEALTH CENTERS;
STAFFMORE, LLC.; ANTHONY A. WOLF, INC.; BEHAVIORAL HEALTHWORKS,
LLC; RUGGIERO, LLC
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-16-cv-03799)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 2, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, Circuit Judges.

(Filed: August 5, 2020)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SHWARTZ, Circuit Judge.

Caryn Gratz appeals an order of the District Court granting summary judgment to Defendants. For the reasons set forth herein, we will affirm.

I

Gratz worked for the Philadelphia Mental Health Clinic, Inc. ("PMHC"), a nonprofit organization, at two different times. From 1999 through 2004 or 2005, she served as agency director, and from 2015 to 2016, she was its chief operating officer. Between her two stints at PMHC, Gratz worked as a managing director at another organization, the Public Health Management Corporation ("PHM"). Gratz was fired from PMHC in 2016.

Gratz sued PMHC, its chief executive officer Kerey Parnes (formerly, Kerey Ruggiero), its former executive director Donna Moran, and four entities that Parnes owned or controlled, Staffmore, LLC, Anthony A. Wolf, Inc., Behavioral Healthworks, LLC, and Ruggiero, LLC (collectively "Organizational Defendants"), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d).[1] Gratz alleged that Parnes and Moran "orchestrated a scheme to divert PMHC's funds away from its charitable purpose and into their own pockets" through a series of payments from PMHC to the Organizational Defendants. App. 24 ¶ 1. She asserts that the Defendants engaged in, and conspired to engage in, a pattern of racketeering activity, specifically, mail fraud under § 1341, wire fraud under § 1343, and witness tampering

---

[1] Gratz's claims against PMHC were dismissed with prejudice after the parties reached a settlement.

2

under § 1512.  The District Court granted Defendants' motion for summary judgment,

holding that Gratz lacks standing under RICO.  Gratz appeals.

II[2]

A

"To establish a RICO claim, a plaintiff must show '(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity.'"  Warden v. McLelland, 288 F.3d 105,

114 (3d Cir. 2002) (quoting Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985));

see also § 1962(c).  "The statute defines racketeering by a list of criminal activities that

constitute predicate acts for purposes of RICO," Warden, 288 F.3d at 114, which includes

wire fraud, mail fraud, and witness tampering, see § 1961(a).  To have standing to bring a

RICO claim, a plaintiff must show "(1) that he was injured (2) by reason of a violation of

§ 1962."  Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005).  This requires the

plaintiff to demonstrate "that . . . she was injured by an act that is independently wrongful

under RICO, . . . and not merely by a non-racketeering act in furtherance of a broader

RICO conspiracy."  Id. (internal quotation marks and citation omitted).  Furthermore, a

plaintiff must show that the defendant's "RICO violation was not only a 'but for' cause

---

[2] The District Court had jurisdiction under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over a district court's grant of summary judgment." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015).  We apply the same standard as the District Court, viewing all facts and drawing all reasonable inferences in the non-movant's favor.  Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

3

of his injury, but also that it was the proximate cause." Id. The proximate cause requirement means that the plaintiff's injury must be the "direct" result of an act of racketeering, id., rather than an attenuated harm following a "long chain of intervening causes," id. at 270; see also St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., __ F.3d __, No. 19-3340, 2020 WL 4197525, at *4 (3d Cir. July 22, 2020); In re Avandia Mktg., Sales Practices & Prod. Liab. Litig., 804 F.3d 633, 644 (3d Cir. 2015); Callahan v. A.E.V., Inc., 182 F.3d 237, 261 (3d Cir. 1999).

In assessing whether a plaintiff has established proximate cause, we examine six factors:

> (1) the causal connection between defendant's wrongdoing and plaintiff's harm; (2) the specific intent of defendant to harm plaintiff; (3) the nature of plaintiff's alleged injury . . . ; (4) the directness or indirectness of the asserted injury; (5) whether the damages claim is . . . highly speculative; and (6) keeping the scope of complex . . . trials within judicially manageable limits, i.e., avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.

Anderson, 396 F.3d at 270 (first two omissions in original) (internal quotation marks and citation omitted). We analyze Gratz's alleged injuries under these factors.

B

Gratz asserts Defendants' racketeering acts caused her three injuries. First, she argues that Defendants "fraudulently induced" her to leave her PHM job for the chief operating officer position at PMHC, thereby causing her to lose her prior "position, earnings, and future opportunities at PHM," via a series of actions, which she argues amount to wire fraud. Appellant's Br. at 29. Specifically, Gratz alleges that Parnes and Moran recruited Gratz from PHM by making a series of false and misleading

4

representations that were "intended to conceal" Defendants' self-dealing transactions. App. 32 ¶ 41.

Second, Gratz argues that once she rejoined PMHC in 2015, Defendants "induced her" to provide false assurances to PMHC's funding partners about Defendants' self-dealing transactions, thereby causing injury to her professional reputation—acts that she alleges constitute wire fraud. Appellant's Br. at 30.

Third, she argues that Defendants terminated her, and thereby deprived her of her job and income to prevent her from reporting their misconduct, an act which Gratz alleges constitutes witness tampering. We address each injury in turn.

1

The District Court's thorough opinion rightly determined that Gratz lacks standing to bring a RICO claim based upon a theory that Defendants engaged in acts of wire fraud to fraudulently induce her to leave her PHM job and provide false assurances to PMHC's funding partners.[3] First, as the District Court emphasized, Gratz has not established "the

---

[3] Gratz's legal theory underlying her wire fraud allegations is unclear. At times, Gratz argues that Defendants' scheme was intended to obtain fraudulently from PMHC funds that would have been used for the organization's "charitable purpose[s]," meaning that PMHC was the victim of the fraud scheme. Appellant's Br. at 27. At other times, Gratz argues that the scheme was intended to "defraud[] her" of her employment services and reputation, Appellant's Br. at 34, or of the right to control her assets.

To the extent that Gratz argues that PMHC was the victim of the alleged wire fraud scheme, Gratz lacks standing because her alleged injury would be "derivative of harm suffered by a more immediate victim of the RICO activity"—PMHC. Avandia, 804 F.3d at 644; see also id. at 642 ("[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.").

To the extent that Gratz argues that she was the victim of the alleged wire fraud scheme, we address herein whether Gratz has standing.

causal connection between [Defendants'] wrongdoing and [her] harm." Anderson, 396 F.3d at 270. Gratz alleges that Defendants' misrepresentations induced her to leave PHM and to provide false assurances to PMHC's funding partners, but she has not offered evidence that establishes the extent to which the misrepresentations actually influenced her behavior. Indeed, as the District Court observed, the record is "utterly devoid of any specific identification of a causal nexus." App. 17. As a result, it would be difficult for a jury "to ascertain the amount of [the] plaintiff's damages attributable to the [wire fraud] violation, as distinct from other, independent, factors." Callahan, 182 F.3d at 261 (citation omitted). "The more difficult it is to distinguish between the effects of the defendants' legitimate activities and their alleged racketeering actions on the plaintiff[], the more likely we are to conclude that proximate causation is lacking." Id. at 263; see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 459 (2006) (citation omitted) (holding that plaintiff failed to establish RICO standing because plaintiff's injury "could have resulted from factors other than [defendants'] alleged acts of fraud").

Second, Gratz has not established that Defendants had a "specific intent" to cause the injury she alleges, namely, the loss of her earnings and opportunities at PHM. Anderson, 396 F.3d at 270. While Defendants had the specific intent to hire Gratz, there is no evidence that they specifically intended her to lose income or opportunities by doing so. Third, the nature of certain of her alleged injuries does not satisfy RICO because RICO standing requires "proof of a concrete financial loss, and not mere injury to a valuable intangible property interest." Avandia, 804 F.3d at 638. Although Gratz's allegations that she lost income by leaving PHM may constitute a tangible property

6

interest, her alleged loss of reputation and future job opportunities do not because they are both intangible and speculative, Anderson, 396 F.3d at 270, and these harms lack the direct relationship to Defendants' actions that RICO requires, Callahan, 182 F.3d at 261. While there is no clear risk of duplicative recoveries, the other factors demonstrate that Gratz lacks RICO standing to pursue her claims based on wire fraud.

Gratz's claims parallel those of the plaintiff in Shearin v. E.F. Hutton Group, Inc., who we held lacked RICO standing. Shearin alleged that she was "induced" by a securities-fraud scheme "to leave her previous employment and enter into an employment contract with [one of the defendants' companies] so that it would have the facade of a genuine . . . company." 885 F.2d 1162, 1164 (3d Cir. 1989), abrogated on other grounds by Beck, 529 U.S. at 494. We held that Shearin's job loss could not "fairly be said to have resulted from . . . any of RICO's first three subsections or from the predicate acts necessary to establish these," because the predicate acts did not "cause the injuries of which [the plaintiff] complains." Id. at 1168. Thus, we held Shearin lacked RICO standing. Similarly, Gratz lacks standing to bring her RICO claims based on alleged acts of wire fraud.

2

Gratz also asserts that she has standing because Defendants' offer of a severance package and confidentiality agreement and termination were acts of witness tampering that led to her loss of employment. According to Gratz, Defendants terminated her after she started gathering documents that she believed revealed Defendants' alleged fraud. Specifically, in December 2015 and January 2016, Gratz instructed PMHC's chief

7

financial officer (CFO) and chief medical officer to help her collect PMHC documents in order to report Parnes's conduct to the "appropriate authorities," App. 1630-1631 ¶ 70, such as "the Attorney General and anyone else in the government who [had] oversight of PMHC," App. 1634 ¶ 79. Around that time, a chief executive officer of another behavioral health organization, Nicholas Tartaglione, had been indicted for embezzling money from the organization through self-dealing transactions and Gratz discussed the indictment with PMHC's employees. Thereafter, Gratz overheard Parnes ask the CFO "pointed questions about what documents [Gratz] had asked him for," in particular, whether Gratz had asked for the organization's "General Ledger," a document that "memorialized details about each discrete transaction between PMHC and Parnes' companies." App. 1635 ¶ 81. Parnes told the CFO that "she did not trust [Gratz] or [Gratz's] motives." Id. Less than a week later, Parnes informed Gratz that PMHC would be terminating her because Parnes felt that she and Gratz had "different visions for the future." App. 1636 ¶ 85. During the meeting, Parnes and her lawyer offered Gratz $25,000 in severance and asked her to sign a confidentiality agreement, which would have required Gratz "to keep all information related to PMHC confidential." App. 1636-1637 ¶ 86. Gratz refused to sign the agreement "there and then," as Parnes had requested, and she was fired. App. 1636-1637 ¶ 86.

As the District Court recognized, these facts do not constitute witness tampering as contemplated under the federal witness tampering statute upon which Gratz relies. Section 1512 makes it a crime to (1) "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading

8

conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding," 18 U.S.C. § 1512(b)(1); (2) engage in such acts with the intent to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense," § 1512(b)(3); (3) "corruptly . . . obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so," § 1512(c)(2); (4) "intentionally harass[] another person and thereby hinder[], delay[], prevent[], or dissuade[] any person from . . . attending or testifying in an official proceeding," § 1512(d)(1); or (5) "report[] to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense," § 1512(d)(2).

We affirm the District Court's holding that Gratz lacks standing to bring a RICO claim arising out of witness tampering, but for some reasons that differ from the District Court. See Bradley v. W. Chester Univ., 880 F.3d 643, 650 (3d Cir. 2018) ("[W]e may affirm [a grant of summary judgment] on any ground supported by the record.").

First, Gratz lacks standing to bring a claim arising out of violations of § 1512(b)(1), (c)(2), and (d)(1) because she offered insufficient evidence to establish a nexus between her termination and an "official proceeding." United States v. Tyler, 732 F.3d 241, 248 (3d Cir. 2013). To allege a violation of these provisions, Gratz needed to show that Defendants acted "in contemplation [of a] particular official proceeding." Id. (alteration in original) (citation omitted). The official proceeding "need not be pending or about to be instituted at the time of the offense," § 1512(f)(1), but it must be

9

"foreseeable" at the time that the defendant "engaged in the proscribed conduct," <u>Tyler</u>, 732 F.3d at 249 (quoting <u>United States v. Shavers</u>, 693 F.3d 363, 378 (3d Cir. 2012)). Gratz offered no evidence of a foreseeable official proceeding. At the time of Gratz's termination, there was no indication that PMHC or Defendants were even being investigated. Absent some indication that a charge was foreseeable, as opposed to speculative and conjectural, Gratz cannot establish a violation of § 1512(b)(1), (c)(2), or (d)(1).

Second, Gratz failed to establish a violation of § 1512(b)(3) or (d)(2) because the termination did not constitute the "intimidation, threaten[ing], or corrupt persua[sion]" of another person, that § 1512(b)(3) requires, and did not constitute "harass[ment]," as § 1512(d)(2) requires. "A threat is an expression of intention to do harm," and "[t]o intimidate means to discourage someone by threats or by a threatening manner or to make someone fearful," an element that requires the Government to prove "that the defendant's threatening words or conduct created a reasonable likelihood that the person would be in fear of harm." <u>United States v. Johnson</u>, 968 F.2d 208, 211 (2d Cir. 1992). Corrupt persuasion, furthermore, means "influencing [another person] to violate his legal duty." <u>United States v. Davis</u>, 183 F.3d 231, 249 (3d Cir. 1999) (citation omitted), <u>as amended,</u> 197 F.3d 662 (3d Cir. 1999); <u>see also</u> <u>id.</u> at 250 (holding that the statute requires "more culpability" than simply "attempting to discourage disclosure in order to hinder an investigation" (citation omitted)). Finally, the word "harass" in § 1512(d) carries its ordinary meaning, to "badger, disturb or pester." <u>United States v. Wilson</u>, 796 F.2d 55, 58 (4th Cir. 1986) (citation omitted). Gratz's termination involved a single

10

meeting in which Parnes told Gratz she was being terminated. Even if Parnes fired Gratz because Parnes was concerned that her activities may be revealed, the termination here does not rise to the level of intimidation, a threat, corrupt persuasion, or harassment as contemplated under § 1512.[4] In fact, the termination simply restricted Gratz's ability to gather the documents reflecting the alleged wrongdoing, but it did not silence her from reporting it nor did she provide evidence that it intimidated her from doing so. Thus, Gratz did not suffer an injury as a result of a RICO predicate act.

## III

For all the foregoing reasons, we will affirm.

---

[4] Gratz presents no evidence that the termination was intended to intimidate, threaten, corruptly persuade, or harass other employees at PMHC out of reporting Defendants' conduct to the authorities. Moreover, even assuming Parnes' offer of a severance payment as part of a confidentiality agreement constituted an attempt to bribe Gratz to withhold information from the authorities, the offer of the confidentiality agreement—as distinguished from the termination—was not the proximate cause of Gratz's loss of her job. Accordingly, Gratz lacks standing to bring a RICO claim arising out of the offer of the confidentiality agreement.

We do not hold that a termination or a threatened termination can never constitute witness tampering as a matter of law, but rather hold that Gratz has failed to adduce evidence to support her claim in this case.