**Ronald R. ROCK, et al.**

v.

**Fay VOSHELL**

No. Civ.A. 05–1468.

United States District Court,
E.D. Pennsylvania.

Nov. 10, 2005.

Andrew Lapat, Andrew Lapat, LLC, Wynnewood, PA, for Ronald R. Rock, et al.

Blair H. Granger, Blair H. Granger & Associates, P.C., Paoli, PA, for Fay Voshell.

## MEMORANDUM

BAYLSON, District Judge.

Plaintiffs Ronald R. Rock and Janet Rock bring this suit against Defendant Fay Voshell for breach of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons.Stat. § 201 et seq. ("UTPCPL"), Real Estate Seller Disclosure Law, 68 Pa. Cons.Stat. § 7301 et seq. ("RESDL"), fraud, breach of contract, negligence, and negligence per se. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship of the parties. Before the Court are Defendant's Motion to Dismiss pursuant to Federal Rule 12(b)(6) which will be granted, without prejudice, and Motion to Strike pursuant to Federal Rule 12(f), which will be denied as moot.

### I. *Background*

The Complaint sets forth the following factual allegations. Defendant is a citizen of the State of Delaware. Plaintiffs, husband and wife, are citizens of the Commonwealth of Pennsylvania and reside within the Eastern District. The property at issue in the case is located within the Eastern District at 8700 Montgomery Avenue, Wyndmoor, Pennsylvania (the "Home").

This case concerns the sale of a residence. A Seller's Property Disclosure Statement, dated February 25, 2004, was provided to Plaintiffs by Defendant (the "Disclosure Statement"). The Agreement of Sale is dated March 9, 2004. Plaintiffs purchased the Home from Defendant on or about August 27, 2004, for $1.35 million.

Plaintiffs were aware that previously, on or about September 2003, a large tree had

fallen and struck the Home, causing damage. The Disclosure Statement stated that "due to tree damage, roof and some gutters and downspouts damaged. All repairs expected to be done by mid-April-mid-May depending on contractor's schedule." The other material defect mentioned in the Disclosure Statement was the presence of lead-based paint in some areas of the Home. No further disclosures were made by Defendant regarding the condition of the roof, and Plaintiffs believed that all work had been completed on the roof prior to closing and that there were no material defects with the roof by that time.

Plaintiffs allege, however, that Defendant knew of substantial defects in the condition of the roof prior to closing. On August 25, 2004, days before closing the sale of the Home to Plaintiffs, Defendant brought an action in this Court against Allstate Insurance Company alleging that Allstate failed to compensate her properly for the damage suffered to the Home. *Voshell v. Allstate Ins. Co.*, 04–CV–4041.[1] In connection with this suit, Defendant claimed that $872,168 in repairs to the Home were necessary. In a Property Damage Services Project Estimate (the "Project Estimate"), dated December 1, 2004, Defendant stated that the total cost necessary to repair the roof would be $370,505.01. The Project Estimate also included other categories of needed repair: demolition, lumber and millwork, HVAC, plaster, resilient floor covering, hardwood flooring, carpeting, decorating, electrical, masonry, glazing and windows, ceramic tile, cleaning and miscellaneous, and hardware. The total Voshell claimed was needed to repair the home was $872,168.00. This Project Estimate was prepared based on a contractor's review of the home, performed on August 26, 2004, the day before

Defendant closed the sale of the Home to Plaintiffs.

Plaintiffs allege that, in addition to the repairs listed in the Project Estimate, there were other material defects in the Home known to Defendant that were not disclosed to Plaintiffs, including leaking in the front vestibule area, and erosion and leaking of the pipes in the third bathroom, for which Defendant had allegedly received insurance money to repair but only repaired sufficiently to conceal the existence of the problem. According to Plaintiffs, the drains underneath the floor of the third bathroom had rotted and the bathroom could not be used without substantial repairs.

Plaintiffs allege that Defendant therefore failed to make lawful and proper disclosures, that Plaintiffs have spent a substantial sum of money to repair defects which Defendant failed to disclose, that Plaintiffs reasonably relied on Defendant's disclosures, and that the omissions regarding the defects in the Home would have had a material impact on the price of the Home.

## II. Parties' Contentions

### A. Defendant's Motions

Defendant's Motion to Dismiss argues that Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I) and for Fraud (Count III) should be dismissed because the alleged misrepresentations by Defendant are barred by the parol evidence rule. Defendant argues that the integration clause at ¶ 26 of the Agreement of Sale between Plaintiffs and Defendant precludes Plaintiffs from demonstrating reliance, without which Plaintiffs cannot show all the elements of fraud in order to make out a claim under the

1. This suit was dismissed on May 4, 2005, after a settlement was reached.

UTPCPL. Defendant also argues that the UTPCPL claim is barred by the economic loss doctrine because Plaintiffs can claim only economic damages.

As to Plaintiff's claim under the Breach of RESDL (Count II) and for Negligence Per Se (Count VI), Defendant contends that the claims are barred by the parol evidence rule, because the seller's disclosure statement was not incorporated into the Agreement of Sale. As to Negligence Per Se, Defendants argue further that, even if Plaintiffs could show that a statute was violated, the Negligence Per Se claim should be dismissed because Plaintiffs cannot show that the violation of a law was the proximate cause of their alleged damages.

As to the Breach of Contract claim (Count IV), Defendant argues for the dismissal on the following grounds:

(1) the Agreement of Sale between the parties does not require the property to be conveyed pursuant to any alleged representation;

(2) pursuant to the Agreement of Sale, Plaintiffs agreed that they had either inspected the property or waived the right to do so (¶ 6), and agreed to purchase the property in its then current condition; and

(3) the Agreement of Sale contained a release clause (¶ 25) whereby Plaintiffs released Defendant from any claims relating to the condition of the property.

Finally, Defendant argues that the Negligence claim (Count V) should be dismissed because Plaintiffs cannot establish any duty owed to them by Defendant and because recovery under a negligence theory is barred by the economic loss doctrine.

Defendant's Motion to Strike alternatively asks that Plaintiffs' request for treble damages be stricken for all counts but Count I (Breach of UTPCPL) because Plaintiffs have no common law or statutory right to treble damages. Defendant also contends that Plaintiffs' request for punitive damages should be stricken because punitive damages are not recoverable absent outrageous behavior, and that Plaintiffs' request for prejudgment interest be limited to Count IV (Breach of Contract) because only a plaintiff who succeeds on a contract claim to pay a definite sum of money is entitled to prejudgment interest. Defendant also asks that Plaintiffs' request for attorneys' fees be stricken as to all but Count I (Breach of UPTCPL), as Pennsylvania does not permit recovery of attorneys' fees absent a specific statutory provision or contract allowing such recovery.

### B. *Plaintiffs' Response*

Plaintiffs argue that the parol evidence rule is not applicable here because the misrepresentations alleged in the complaint involve the written, not oral, representations in the Disclosure Statement, which was incorporated into the Agreement of Sale. Plaintiffs' argument for incorporation is based on ¶ 29 of the Agreement of Sale which states: "The following are part of this Agreement if checked," below which a box is checked next to the statement "Buyer has received a Seller's Property Disclosure Statement before signing this Agreement." According to Plaintiffs, by checking this box, Defendant expressly incorporated the Disclosure Statement into the Agreement of Sale. Plaintiffs also argue that, even if the Disclosure Statement was not to be incorporated into the Agreement of Sale, Plaintiffs' fraud claim is not barred by the parol evidence rule, because the parol evidence rule does not apply when a party was induced by fraud or duress to enter the contract.

Plaintiffs also argue that the economic loss doctrine is not applicable because, un-

der Pennsylvania law, claims for intentional fraudulent conduct, and specifically fraud in the inducement, are exceptions to the economic loss doctrine, an exception that applies to claims under the UTPCPL as well. Plaintiffs contend that they are entitled to recovery because the deliberate omissions and fraudulent misrepresentations in violation of the RESDL prevent this case from being a simple breach of contract case and instead make it a case involving intentional tort and within the purview of the UTPCPL.

Plaintiffs argue that while Defendant rightfully asserts that she had no duty to investigate her property, the RESDL does impose a duty to disclose all defects of which Defendant had knowledge. Because Defendant chose to file suit and undertake an investigation of the condition of the Home two days prior to closing, Plaintiffs argue that she is liable for deliberately failing to disclose what she already knew.

Plaintiffs also argue that the negligence claim is not barred because this case sounds primarily in tort, and that the negligence per se claim must succeed because, had Defendant not violated the RESDL and failed to disclose the $872,168.00 in repairs she was claiming in her lawsuit against Allstate, Plaintiffs would not have purchased the Home for $1.35 million. Therefore, Defendant's unlawful failure to disclose was the proximate cause of Plaintiffs' injuries.

Regarding the Motion to Strike, Plaintiffs state that the claims for treble damages and attorneys' fees are made only in relation to the UTPCPL claim. Plaintiffs argue that the imposition of punitive damages is appropriate, given Defendant's blatant disregard for the law in representing to Plaintiffs that all repairs relating to the fallen tree had been made, when she was simultaneously making a claim against her homeowners' policy for repairs.

## C. Defendant's Reply

In Defendant's Reply, she argues that the lawsuit filed against Allstate does not provide a basis for any recovery by Plaintiffs because that suit involved Allstate's alleged refusal to fully and fairly indemnify Defendant as she reasonably expected. Defendant contends that the complaint in that action alleged only that the repairs to the roof did not restore it to its "preloss" condition, and those allegations do not suggest any remaining defect in the roof or that the repairs were not made.

Defendant also notes that the Project Estimate was dated December 1, 2004, several months after the closing with Plaintiffs on August 27, 2004. Defendant thus argues that Plaintiffs' reliance on this document as proof of Defendant's knowledge of any defects prior to the closing has no factual basis. Moreover, according to Defendant, the Project Estimate is not a list of defects in the Home but rather an itemized estimate for the replacement of the roof that Defendant believed she was owed by Allstate, and is not evidence that the repairs performed left the roof in a defective condition. Defendant contends that Plaintiffs "are now attempting to turn the Defendant's claims against her insurer for failure to compensate her for the loss in value to the Property caused by the fallen tree into an alleged failure by Defendant to disclose 'defects.'" Def's Reply, at 3. Defendant notes that Plaintiffs' offer to purchase the Home was submitted after the Home was damaged by the fallen tree and made with knowledge of that damage.

Defendant's Reply also argues that Plaintiffs' contentions regarding the applicability of the parol evidence rule are in error because the Disclosure Statement was not incorporated into the Agreement of Sale. Defendant contends that ¶ 29 of the Agreement of Sale does not include the

statement regarding the acknowledgment of the receipt of a copy of the Disclosure Statement, which Defendant argues was not part of ¶ 29A and therefore not incorporated into the Agreement of Sale. Defendant also contends that the case law relied upon by Plaintiff has been subsequently superseded. Def's Reply, at 5. Similarly, Defendant argues that Plaintiffs' arguments regarding the economic loss doctrine ignore Pennsylvania appellate case law.

More generally, according to Defendant, nothing in the Project Estimate indicates that any defects exist which Defendant would have been obligated to disclose to Plaintiffs, and Plaintiffs have not alleged any such defects.

### III. *Motion to Dismiss*

#### A. *Legal Standard*

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

#### B. *Discussion*

#### 1. *Counts I and III: Failure to State a Claim Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for Fraud*

Defendant's Motion to Dismiss first argues that (1) the UTPCPL requires that Plaintiffs prove all of the elements of common law fraud; (2) even the catchall provi-

sion of the UTPCPL requires proof of all fraud elements; and (3) Plaintiffs have failed to demonstrate the reliance element under fraud.

■ To recover on a claim of fraud in Pennsylvania a plaintiff must show six elements by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Youndt v. First Nat'l Bank,* 868 A.2d 539, 545 (2005) (citing *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994)). The UTPCPL was amended in 1997 to include the so-called "catch all" provision. While the statute previously prohibited "engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding," the catch all provision expanded its scope to cover not just "fraudulent" but also "deceptive" conduct. *See* 73 Pa. Cons.Stat. § 201–2(4)(xxi).

■ While there is some uncertainty as to the requirements in proving a UTPCPL case under the catch all provision, Pennsylvania courts have recently held that all of the fraud elements are still required, even with the addition of the "deceptive" language. *See Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 (Pa.Super.2000) ("In order to state a claim under the catchall provision of the Unfair Trade Practices and Consumer Protection Law, a plaintiff must prove the elements of common law fraud.").

■ The parol evidence rule functions to bar the introduction of evidence concerning alleged prior misrepresentations when a writing is adopted by the parties as

the final and complete expression of their agreement. *Blumenstock v. Gibson*, 811 A.2d 1029, 1037 (Pa.Super.2002). Contracts often contain an integration clause, specific language establishing that such agreement is the final and complete expression of the agreement. An integration clause ensures that the written contract, if unambiguous, is held to "express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, *nor prior written agreements,* or other writings, are admissible to explain or vary the terms of the contract." *Paxson v. Asensio*, 2003 WL 21076984, at \*5 (E.D.Pa. May 5, 2003) (emphasis added).

The integration clause in ¶ 26 of the Agreement of Sale provides as follows: "[T]his agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement will not be altered, amended, changed, or modified except in writing executed by the parties." Furthermore, under ¶ 8 of the Agreement of Sale, Plaintiffs waived their right to inspection of the property and thereby (pursuant to ¶ 25 of the same document) released Defendant from "any and all claims, losses or demands, including, but not limited to ... any defects or conditions on the property."

■ Plaintiffs' claim that the Disclosure Statement failed to disclose material defects relies on the argument that the Disclosure Statement was incorporated into the Agreement of Sale. Specifically, Plaintiffs rely on ¶ 29 of the Agreement of Sale and allege that the checked box next to the language reading "Buyer has received a Seller's Property Disclosure Statement before signing this agreement ...." falls under the bold language under subsection (A)

above stating, "The following are part of this agreement if checked ..." Plaintiffs' claim that the checked box next to Property Disclosure Statement somehow incorporates that document into the Agreement of Sale is without merit. Only the checked items found under subsection (A) are "part of the agreement." In contrast, the checked boxes found in lines 659 to 665 indicate only Buyer's *receipt* of the various documents, not their incorporation into Agreement of Sale. Furthermore, subsection (B) provides an additional blank line for inclusion of any specific language which the parties may want to include in the Agreement of Sale. The parties provided no information on this line, writing only "n/a." The completely empty line following subsection (B) clearly indicates that ¶ 29 is the final numbered paragraph of the Agreement of Sale, since there are no similar empty lines in the document, even between the numbered paragraphs. Thus, the layout of the page as well as a plain reading of the language of the document clearly indicate that the checked box on line 662 of page twelve of the Agreement of Sale does not incorporate the Disclosure Statement. The checked box indicates Buyer's receipt of that Statement and nothing more.

Plaintiffs next claim that even without any explicit incorporation of the Disclosure Statement into the Agreement of Sale, reference to the former document is not barred by the parol evidence rule. Under Pennsylvania law, if one of the parties is induced through fraud to enter the contract in question, evidence of such inducement is not barred by the parol evidence rule. *Nat'l Bldg. Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963, 965 (1977); *see also Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs.*, 951 F.2d 1399, 1408 (3d Cir. 1991) ("[E]vidence of fraud in the induce-

ment will suspend the parol evidence rule because fraud prevents formation of a valid contract—'no contract, no parol evidence rule.'") (quoting *Betz Lab., Inc. v. Hines,* 647 F.2d 402, 406 (3d Cir.1981)). The exception to the parol evidence rule set forth in *Byler* was qualified, however, one year later in *LeDonne v. Kessler,* 256 Pa.Super. 280, 389 A.2d 1123 (1978), where the court established a test that "balance[d] the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause." *Id.* at 1130. *LeDonne* noted that "mechanical application of Byler's abstract principle ... would be inappropriate and, to the contrary would undermine the policies underlying the parole evidence rule .... where appellants' inspection of the premises revealed the very problem of which they now protest." *Id.*

■ A brief discussion of the facts in *LeDonne* is instructive. *LeDonne* involved the sale of a home in which the sellers represented that various problems had been fixed, including (1) a drainage problem in the septic system; (2) a leak in the sundeck; and (3) a leak in the basement. *Id.* at 1125. During an inspection of the property, the buyer noticed indications of leakage in both the sundeck and the basement, and the seller then gave reassurances that the areas were free of water and septic problems. When leakage did in fact occur after they had moved in, the buyers sued, alleging fraudulent inducement and seeking to avoid invocation of the parol evidence rule. The *LeDonne* court applied a balancing test in order to preserve the "application of the parol evidence rule when a party knows about the existence of substantial problems, yet contractually stipulates that he has received no promises about these promises." *Id.* at 1130. The court ultimately concluded that the parol evidence rule did not bar evidence of seller's misrepresentations concerning the septic tank, since a reasonable inspection by the buyer would not have indicated a problem with that system. As for the deck and basement, however, the inspection did reveal some indications of leakage. Because the buyer subsequently signed an agreement stating that no representations had been received concerning these areas, the court held that the parol evidence rule did bar evidence of any prior representations as to the deck and the basement. *Id.* at 1130–31.[2] The Third Circuit has held that "Pennsylvania law requires 'the trial judge [to] decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case.'" *Mellon Bank,* 951 F.2d at 1409 (quoting *Beardshall v. Minuteman Press Int'l, Inc.,* 664 F.2d 23, 26 (3d Cir.1981)).

■ In this case, the Agreement of Sale contains a very broad disclaimer about representations:

> Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not part of this Agreement unless expressly incorporated or stated in this Agree-

---

2. The *LeDonne* analysis has been applied as recently as 2002 and is generally regarded as the accepted test in applying the parol evidence rule in residential real estate sales involving an integration clause and a claim of fraud in the inducement by the buyer. *See* *Blumenstock v. Gibson,* 811 A.2d 1029, 1037–38 (Pa.Super.2002); *Bowman v. Meadow Ridge, Inc.,* 419 Pa.Super. 511, 615 A.2d 755, 758 (Pa.Super.1992). Surprisingly, Plaintiffs do not even cite *LeDonne* in their Response.

ment. It is further understood that this Agreement contains the whole Agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement will not be altered, amended, changed, or modified except in writing executed by the parties.

Agreement of Sale, at ¶ 26A. The complaint in ¶¶ 22–24 alleges that Defendant knew of defects in the Home prior to its sale and that Plaintiffs have since spent considerable sums in repairing such defects. Plaintiffs also claim that Defendant's failure to disclose relevant defects in the Home had a material impact on its sale price and that Plaintiffs had no reason to know that Defendant omitted material facts concerning the condition of the Home. However, given the terms of the Agreement of Sale and considering that Plaintiffs waived the inspection rights provided therein, the allegations in the complaint fail to specify fraudulent statements in sufficient detail to come under the principles stated in *LeDonne,* and Counts I and III must be dismissed for these reasons. Although the Court has doubts whether, given the contractual terms, Plaintiffs can allege fraud with the specificity required by F.R. Civ. P. 9(b), the dismissal will be without prejudice so Plaintiffs can replead.

### 2. *Count II: Failure to State a Claim Under the Pennsylvania Real Estate Seller Disclosure Law*

Under the RESDL, a seller transferring real property "must disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement …" 68 Pa. Cons.Stat. § 7303. Plaintiffs allege that Defendant seller failed to make disclosures of the true condition of the Home in her disclosure statement. The RESDL requires that the seller "not make any representations that the seller or the agent of the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect." *Id.* § 7308. As to the timing of any disclosures, Plaintiffs cite § 7307 in arguing that Defendant had a duty to update the report if any information later became known as to the status of the property. This section provides as follows: "If information disclosed in accordance with this chapter is subsequently rendered inaccurate prior to final settlement as a result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the seller shall notify the buyer of the inaccuracy." *Id.* § 7307.

Defendants contend that the Project Estimate received by seller in relation to her subsequent lawsuit against Allstate results in Defendant's deliberate failure to disclose what she learned of in this report. While Plaintiffs are correct that Defendant owed a duty to disclose any material defects she learned of through the inspection, they mischaracterize the significance of the August 26, 2004 inspection. The Project Estimate resulting from the inspection was not issued until December 1, 2004, several months after the closing date on the Wyndmoor property. Moreover, the lawsuit between Defendant and Allstate does not amount to proof of defects in the property. Looking at the complaint in that case, Voshell alleged only that the insurance company "refused to fully and fairly indemnify plaintiff as she reasonably expects under the policy." *Voshell v. Allstate Ins. Co.,* 04–CV–4041, Complaint, at ¶ 6. Moreover, the Voshell complaint also alleges that Allstate's bad faith conduct also included "indemnifying plaintiff for

only part of her roof despite actual notice that a patch repair will not restore the roof to preloss condition." *Id.* at ¶ 9. The allegations in the complaint, rather than demonstrating material defects in the Home, merely indicate that Defendant was suing her insurance company in order to seek compensation for the loss in value to her property cause by the fallen tree.

■ It is uncontested that Plaintiffs were aware that a large tree had fallen on the house. Complaint, at ¶ 9. Plaintiffs fail to allege violation of the RESDL for two reasons. First, the allegations included in Voshell's complaint against her insurance company simply do not indicate a knowledge of any material defects in the home. There are no specific allegations in the complaint that the listed items in the Project Estimate amount to defects in the Home at the time of sale.[3] The listed cost for the complete replacement of the roof, $370,505.01, does not necessarily indicate the repairs performed on the roof were inadequate, and Plaintiffs have failed to allege any current problems with the roof as repaired. Second, the Project Estimate resulting from the August 26, 2004 inspection was not issued until well after the closing of sale on the Home. Because § 7307 requires the updating of information in the Disclosure Statement only if it is discovered "prior to final settlement," the issuance of the Project Estimate in December, even if it contained items defective or in need of repair, prevented Defendant Voshell from acting upon its contents prior to the closing on the Home on August 27, 2004.

The Motion to Dismiss as to Count II under the Real Estate Seller Disclosure Act is therefore granted because the only theory that can survive the parol evidence rule must be based on fraudulent misrepresentations, which are not specifically pled as required by Rule 9(b). As with Counts I and III, the dismissal will be without prejudice with leave to replead.

### 3. *Count IV: Failure to State a Claim for Breach of Contract*

Because the parol evidence rule bars the alleged misrepresentations in the Disclosure Statement and Plaintiffs have failed to allege any representations by Defendant contained in the Agreement of Sale, Plaintiffs do not state a claim for breach of contract. The Agreement of Sale upon which Plaintiffs rely in their breach of contract claim contained both an integration clause and a release. While the integration clause is relevant to the parol evidence issue, the release effectively bars claims by Plaintiffs as to the condition of the property at the time of sale.

■ A release can be asserted as a basis for motion to dismiss when it has been incorporated into the complaint. *See Straight Arrow Prods. v. Conversion Concepts, Inc.,* 2001 WL 1530637, at *2 (E.D.Pa. Dec. 3, 2001) ("As plaintiff ... has incorporated the Release into the complaint and set forth allegations making its invalidity a sine qua non for its other claims, it is a matter properly addressed by the instant motion."). Here, the release is a part of the Agreement of Sale and is held by the Court to be valid. With reference to the Disclosure Statement barred by the parol evidence rule, the release effectively nullifies all breach of contract claims by the Plaintiffs and the

---

**3.** In ¶ 13 of the complaint, Plaintiffs allege that "Contrary to the disclosures made to Rock that the roof was in good working order, Voshell knew that there were substantial defects in the condition of the roof." What these "substantial defects" were was never set forth in the complaint.

Defendant's Motion to Dismiss as to Count IV will be granted.

### 4. Counts V and VI: Failure to State a Claim for Negligence and for Negligence Per Se

Plaintiffs contend that Defendant breached a duty to disclose any material defects in the Home and that the violation of the RESDL requires the conclusion that a breach of such duty occurred. Defendant also argues that because Plaintiffs' only seek damages for economic loss, they should be prevented from proceeding with their negligence claims. Although the parties spend considerable time and effort in their briefs discussing the applicability of the economic loss doctrine in instances of intentional fraudulent conduct, the invocation of the parol evidence rule made it unnecessary for the Court to address the doctrine in Counts I and III.[4] However, the negligence and negligence per se claims, based on alleged failure to disclose certain defects in the Disclosure Statement, do involve an application of the economic loss doctrine.

▋ Pennsylvania law has been applied to dismiss claims for negligence where the damages alleged are solely economic. The economic loss doctrine provides that "no cause of action could be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." 2–J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir.1997) (citing Aikens v. Baltimore & Ohio R.R. Co., 348 Pa.Super.

17, 501 A.2d 277, 279 (1985)). In addition, courts have held that the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir.1995); see also Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F.Supp.2d 394, 402 (E.D.Pa.2002) (noting that "Pennsylvania courts have applied the economic loss doctrine to negligent misrepresentation claims"). Under the so-called "gist of the action" doctrine, "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied in the law of torts." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa.Super.2002) (quoting Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir.2001)). A negligence claim has been held to be improper when it is based on an alleged breach of an agreement and arises from the same set of facts as a contract claim. Specialty Ins. v. Royal Indem. Co., 324 F.Supp.2d 674, 678 n. 5 (E.D.Pa.2004).

▋ Here, any claims for negligence by Plaintiffs arise from Defendant's alleged failure to disclose defects in the Home. The defects complained of are clearly covered by the broad terms of the release agreed to by Plaintiffs in ¶ 25 of the Agreement of Sale. Plaintiffs are thus raising tort claims for a harm that is addressed in the terms of the contract, and a

---

4. Defendant relies on the Third Circuit decision in Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir.2002), which held that the dismissal of claims under the UTPCPL was proper when the claims were solely economic. Plaintiffs base their argument on O'Keefe v. Mercedes–Benz USA, LLC, 214 F.R.D. 266 (E.D.Pa.2003), which concluded that the Supreme Court of Pennsylvania would not adopt the Werwinski reasoning and held that the economic loss doctrine does apply to UTPCPL claims. While the application of the economic loss doctrine to cases of intentional torts remains unsettled, this case only requires the invocation of the doctrine as to claims of negligence.

remedy can be, and has been, sought through traditional contract claims. Because Plaintiffs allege only loss in value to the Home in this suit, the principles of the economic loss and gist of the action doctrines apply to the negligence and negligence per se claims in this case, and Defendant's Motion to Dismiss Counts V and VI will be granted.[5]

## V. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss will be granted without prejudice as to Counts I, II, and III and with prejudice as to Counts IV, V, and VI. Defendant's Motion to Strike will be denied as moot.

An appropriate Order follows.

### ORDER

AND NOW, this 10th day of November, 2005, it is hereby ORDERED that Defendant's Motion to Dismiss is GRANTED without prejudice as to Counts I, II, and III with leave granted to Plaintiffs to file an Amended Complaint within twenty days of the date of this Order. Counts IV, V, and VI are dismissed with prejudice. Defendant's Motion to Strike is DENIED as moot.

Defendant shall file a responsive pleading to any Amended Complaint within ten days after service of the Amended Complaint.

---

5. In their Memorandum in Opposition to the Motion to Dismiss, Plaintiffs argued that the negligence per se claim set forth in Count VI should be maintained, as it is predicated upon Defendant's violation of the RESDL. Pl's Resp., at 21. This Court has already dismissed Count II of the complaint. which alleged violation of the RESDL, and, as a result, Plaintiffs' claim for negligence per se must also fail. Though Plaintiffs have been given the opportunity to replead with specificity as to Count II, Count VI cannot be similarly renewed due to the conclusions reached above concerning the economic loss doctrine.