**Margaret BROCK et al.**

v.

**Danette THOMAS et al.**

**William Nolde**

v.

**Silver Buckman et al.**

Civil Nos. 10–687, 10–3128.

United States District Court,
E.D. Pennsylvania.

April 14, 2011.

Daniel Urevick–Ackelsberg, Elizabeth C. Goodell, Montgomery L. Wilson, Community Legal Services, Inc., Philadelphia, PA, for William Nolde, Margaret Brock and Alfonzo A. Brock.

Danette Thomas, Pennsauken, NJ, pro se.

Byron White, Pennsauken, NJ, pro se.

Leona Hudgins, Sickerville, NJ, pro se.

Silver Buckman, Cherry Hill, NJ, pro se.

Fresh Start Financial Services, Cherry Hill, NJ, pro se.

Martin I. Isenberg, Philadelphia, PA, for Cynthia Foxworth, Vincent Foxworth.

Patricia Fecile–Moreland, Marks O'Neill, O'Brien & Courtney PC, Philadelphia, PA, for Juan Escobar, Access Abstract Corporation.

Grace Kathryn Henry, Gary A. Devito, Zarwin Baum Devito Kaplan Schaer Toddy PC, Philadelphia, PA, Scott M. Rothman,

Halberstadt Curley LLC, Conshohocken, PA, James W. Brody, American Mtg. Law Group PC, Novato, CA, for Superior Mortgage Corporation.

### *ORDER*

PAUL S. DIAMOND, District Judge.

On July 27, 2010, Plaintiff William Nolde filed an eleven-count Amended Complaint, alleging that Defendants convinced him to enter into a "loan for home repairs" that was actually "an outright sale of his house to Defendants, who then used his equity to funnel tens of thousands of dollars to themselves." (*Case No. 10–3128, Doc. No. 9 at 2.*) On August 31, 2010, Defendant Joyce Sheed filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id., Doc. No. 18.*) On September 30, 2010, Defendant Residential Credit Solutions filed a Motion to Dismiss under Rules 12(b)(1), 12(b)(6), and 12(b)(7). (*Case No. 10–687, Doc. No. 60.*) On November 2, 2010, Defendant Associates Land Transfer, LLC filed a Motion to Dismiss under Rule 12(b)(6). (*Id., Doc. No. 64.*) Plaintiff responded to all three Motions, and Defendants filed Replies. (*Case No. 10–3128, Doc. Nos. 20, 22; Case No. 10–687, Doc. Nos. 63, 72, 78, 84.*) For the reasons that follow, I will deny Defendants' Motions.

### I. *BACKGROUND*

William Nolde alleges the following facts:

Plaintiff is the resident and former owner of a Philadelphia home at 6016 Keystone Street. In July of 2006, Joyce Sheed from "American Home Lending" called Plaintiff—who was then searching for a home repair loan—to offer him a $40,000 loan. Weeks later, Sheed informed Plaintiff that he qualified for a "buyback loan," the terms of which her supervisor, Defendant Silver Buckman, would explain. In September of 2006, Buckman told Plaintiff that to receive the loan, he needed an investor to join him on the deed to his property. After one year, the loan would be refinanced, and the property returned to Plaintiff in his name only. (*Doc. No. 9 at 7–8.*)

On October 13, 2006, Plaintiff received a letter from Buckman stating that Esposito Appraisers would contact him about the "refinance" they had discussed. In November of 2006, Plaintiff paid Defendant Salvatore Esposito $300 to appraise his home. In March of 2007, Plaintiff received an agreement listing Defendants Cynthia and Vincent Foxworth (who, he later discovered, are Buckman's parents) as investors. The "Lease Buyback Agreement" confirmed what Sheed and Buckman told him: that Plaintiff would receive a one-year loan, that his name would stay on the deed, and that his credit would be "repaired" by Defendant Fresh Start during the loan term. Plaintiff executed the Agreement. (*Id.* at 8–10.)

On June 29, 2007, Plaintiff, Buckman, and the Foxworths attended a "closing" at Defendant Associates Land Transfer's offices. ALT was to serve as the settlement/title agent for the transaction, but Buckman actually conducted the closing. Knowing that Plaintiff's attorney was en route, Buckman convinced Plaintiff hurriedly to sign a large stack of documents, telling him that the documents incorporated the buyback loan terms she had previously discussed with him. Plaintiff's lawyer arrived after Plaintiff had already signed the documents and left ALT's offices. Plaintiff was never given a copy of the closing documents by which he unknowingly authorized the sale of his home to the Foxworths, a $126,000 mortgage financed by Pinnacle Financial Corporation, and thousands of dollars in payments

to Defendants in the guise of assorted "fees." (*Id.* at 10–12.)

Two weeks later, Buckman hand-delivered a $40,000 check to Plaintiff, which Plaintiff believed to be his home-repair loan. ALT wrote a second check to Plaintiff for $59,091.19 (the approximate balance of the home sale proceeds), but gave the check to Buckman, who, forging Plaintiff's endorsement, deposited the check into a bank account registered to herself and Fresh Start. "Buckman then paid her parents, the Foxworths, a kickback for serving as straw purchasers of the home." Plaintiff did not learn of the second check until October of 2009. (*Id.* at 12–13.)

Defendants never made any payments on the Pinnacle mortgage, which "quickly went into default." In April of 2009, "Pinnacle assigned the loan to Defendant BAC Home Loans Servicing, L.P." On June 9, 2009, BAC assigned the mortgage to Defendant Residential Credit Solutions, foreclosed on the home, and scheduled a sheriff's sale. Plaintiff—who had previously owned his home free and clear of encumbrances—lost title to his house and "tens of thousands of dollars in home equity." (*Id.* at 14.)

## II. *LEGAL STANDARDS*

■ In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must first determine whether the motion presents a "facial" or "factual" challenge to jurisdiction. *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000). "A facial attack challenges whether the plaintiff has properly pled jurisdiction." *Tulpehocken Spring Water, Inc. v. Obrist Americas, Inc.*, No. 09–CV–2189, 2010 WL 5093101, at *2 (M.D.Pa. Dec. 8, 2010). "A factual attack, in contrast, challenges jurisdiction based on facts apart from the pleadings." *Briar Meadows Developments, Inc. v. South*

*Centre Tp. Bd. of Sup'rs*, No. 10–CV–1012, 2010 WL 4024775, at *1 (M.D.Pa. Oct. 13, 2010). If the challenge is factual, "the presumption of truthfulness does not attach to the allegations in the complaint," the court may consider evidence outside the pleadings, and the plaintiff must establish jurisdiction. *Duffy v. Kent County Levy Court, Inc.*, No. 09–817, 2011 WL 748487, at *2 (D.Del. Feb. 23, 2011); *see also Kligman v. I.R.S.*, 272 Fed.Appx. 166, 168 (3d Cir.2008); *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 512 (3d Cir.2007).

■ In evaluating a motion to dismiss for failure to join a party, the court must first decide if the absent party is necessary for the action—that is, whether (1) "the existing parties cannot obtain complete relief without [it]" or (2) the absent party "claims an interest relating to the subject of the action" and its absence "may harm [its] ability to protect an interest, or subject the current parties to a substantial risk of incurring 'double, multiple or otherwise inconsistent obligations.'" *Markocki v. Old Republic Nat. Title Ins. Co.*, 527 F.Supp.2d 413, 419 (E.D.Pa.2007) (quoting Fed.R.Civ.P. 19(a)). Only if the court finds that the party is necessary must it determine if the case should be dismissed because joinder is not feasible and the party is indispensable. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 402 (3d Cir.1993).

When deciding a motion to dismiss for failure to state a claim, the court must accept as true the plaintiff's well-pled factual allegations and make all reasonable inferences in his or her favor. *See* Fed.R.Civ.P. 12(b)(6); *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). An affirmative defense that is "apparent on the face of the complaint"—such as the expiration of the statute of limitations—can provide a basis for dismissal for

failure to state a claim. *See Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir.1997).

### III. *DISCUSSION*

#### 1. Subject matter jurisdiction

■ Defendant Residential Credit Solutions—named only in Plaintiff's RESPA and Quiet Title claims—argues that this Court lacks jurisdiction because, on June 21, 2007, the Bankruptcy Court granted Mr. Nolde's motion to sell the Keystone Street property to the Foxworths. (*Case No. 10–687, Doc. No. 60 at ¶ 37.*) Plaintiff responds that he sold the property in bankruptcy, relying on Sheed and Buckman's "representations that he would continue to own his home." (*Doc. No. 63 at 2.*) Plaintiff argues that the Bankruptcy Court does not have jurisdiction over the instant action, and that, in any event, *this Court* can hear the dispute.

Although Residential purports to raise a "facial [jurisdictional] challenge," its attack is actually "factual": it argues that a disposition in bankruptcy that Plaintiff never mentioned in his Amended Complaint deprives this Court of jurisdiction. (*See* Doc. No. 60 at ¶ 37); *Tulpehocken Spring Water, Inc.,* 2010 WL 5093101, at *2 ("A factual attack ... challenges jurisdiction based on facts apart from the pleadings."); *cf. Kligman v. I.R.S.,* 272 Fed.Appx. 166, 167–68 (3d Cir.2008) ("The district court properly treated the motion [to dismiss] as a factual attack" when the issue was whether the plaintiff should have appealed his case to the Federal Circuit instead of the district court). In any event, regardless of how I characterize Residential's challenge, I find that this Court has jurisdiction.

Plaintiff's RICO and RESPA claims arise under federal law, and his state law claims share "a common nucleus of operative fact" with those federal claims. *Unit-ed Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also* 28 U.S.C. §§ 1331; 1367 (2006); 18 U.S.C. § 1964 (2006); 12 U.S.C. § 2614 (2006). Accordingly, this Court's jurisdiction is apparent on the face of the Amended Complaint. *Lyons v. Olson,* No. 09–273, 2011 WL 1103889, at *2 (W.D.Pa. Mar. 23, 2011) ("In reviewing a facial attack, which addresses a deficiency in the pleadings, the court must only consider the allegations on the face of the complaint....").

■ Although Plaintiff and Residential disagree over whether the Bankruptcy Court may adjudicate the instant dispute, its jurisdiction is not dispositive. Even if the instant action "arises in" or "relates to" the prior bankruptcy proceeding, this Court has concurrent jurisdiction. *See In re W.R. Grace & Co.,* 591 F.3d 164, 170 (3d Cir.2009) ("Federal district courts 'have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11.' " (quoting 28 U.S.C. § 1334(b))); *Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515 (2d Cir.1998) ("The district court was not divested of its jurisdiction by reason of [Plaintiff's] bankruptcy; whether or not his application for a supplemental fee award fell within the jurisdiction of the bankruptcy court, as a civil proceeding 'related to' a case under the Bankruptcy Code, 28 U.S.C. § 1334(b), the district court nevertheless shared concurrent jurisdiction with the bankruptcy court."); *accord Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 462 (E.D.La.1993) ("District courts have ... concurrent jurisdiction over all civil proceedings ... arising in or related to cases under title 11. Consequently, it is irrelevant whether a particular proceeding is "core" or "non-core." " (internal quotation marks, citations, and

emphasis omitted)). Accordingly, this Court has jurisdiction here.

### 2. Joinder of Parties

■ Residential next seeks dismissal for failure to join Pinnacle—the originator of the mortgage that Residential holds, and so a "necessary and indispensable party" to the RESPA and quiet title claims. According to Residential, Plaintiff has effectively conceded Pinnacle's indispensability by alleging that (1) Pinnacle is jointly and severally liable under RESPA, and (2) with respect to Plaintiff's quiet title claim, Pinnacle had constructive notice of Plaintiff's "continual and open possession of the property." (*Doc. No. 60 at ¶¶ 46–47.*) I do not agree.

I can accord complete relief among the existing Parties with respect to both the RESPA and quiet title claims. Residential owns the mortgage, and Pinnacle—despite Plaintiff's open possession of his house—has not yet "claim[ed] an interest" in the property. Fed.R.Civ.P. 19(a). Although Plaintiff alleges that Pinnacle is jointly and severally liable for violating RESPA, it chose to name Residential as a defendant instead. *Huber v. Taylor,* 532 F.3d 237, 249–250 (3d Cir.2008) ("Courts ... have long recognized that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." (internal quotation marks omitted)). Accordingly, Pinnacle is not a necessary party.

### 3. Statute of limitations

■ The conduct underlying Defendant Sheed's alleged UTPCPL violation (Count IV) occurred, at the earliest, in 2006. Because UTPCPL carries a six-year statute of limitations and Plaintiff filed his Amended Complaint in 2010, the claim is timely. *See Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 495 (1987).

■ Defendants ALT and Residential argue that Plaintiff's RESPA claim (Count V) is time-barred. RESPA includes a one-year limitations period. *See* 12 U.S.C. § 2614. Although the kickbacks and fee-splitting that underlie Plaintiff's RESPA claim allegedly occurred after the June 2007 closing, the Amended Complaint is unclear as to when the money changed hands. Plaintiff alleges that he "had no reason to suspect" that Defendants "were splitting fees related to a sale of his home" because Defendants "took numerous purposeful steps to conceal the nature of the transaction," including issuing him a check for $40,000 (the agreed-upon "loan" amount), and "repeatedly making assertions to [him] about a 'refinance' that was in fact a sale." (*Case No. 10–3128, Doc. No. 9 at 26.*) Plaintiff did not learn that ALT issued a second check to Buckman until October 2009. (*Id.*) Accordingly, I cannot, at this early stage, conclude that Plaintiff's RESPA claim is time-barred. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 425 (3d Cir.1999) ("If the complaint's allegations, taken as true, allege facts sufficient to toll the statute of limitations, it must survive a motion to dismiss."); *Garczynski v. Countrywide Home Loans, Inc.,* 656 F.Supp.2d 505, 516 (E.D.Pa.2009) (Equitable tolling applies to RESPA claims as long as the defendant "commit[ed] some affirmative independent act of concealment upon which the plaintiff[ ] justifiably reil[ied]."). In these circumstances, I will reject Defendants' timeliness contention without prejudice.

■ Finally, Defendants Sheed and ALT have moved to dismiss as untimely Plaintiff's claims of fraud, conversion, negligence, civil conspiracy, and concerted tortious conduct (Counts III, VI, and VIII–X). These claims have a two-year limitations period that begins to run on the date

of injury. 42 Pa. Cons.Stat. Ann. § 5524; *Cooper v. Sirota,* 37 Fed.Appx. 46, 48 (3d Cir.2002) (fraud); *Barnes v. American Tobacco Co.,* 161 F.3d 127, 152 (3d Cir.1998) (negligence); *Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112, 114 (1987) (conversion); *see also Reynolds v. Federal Bureau of Prisons,* No. 09–CV–3096, 2010 WL 744127, at *8 (E.D.Pa. Mar. 2, 2010) ("Under Pennsylvania law, the statute of limitations for civil conspiracy is the same as the statute of limitations for the underlying tort."); *Brooks v. Sagovia,* 431 Pa.Super. 508, 636 A.2d 1201, 1202 (1994) ("As a general rule, the statute of limitations will begin to run on the date the injury is sustained.").

It is difficult at this stage to determine the specific date of Plaintiff's injury. The purported misrepresentations began in July 2006 with Sheed's phone call, Plaintiff unknowingly sold his home at the June 29, 2007 closing, ALT gave Plaintiff's second check to Buckman sometime later, and BAC foreclosed on the home and scheduled a sheriff's sale in July 2010.

Pennsylvania's discovery rule "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured" by another. *Crouse v. Cyclops Industries,* 560 Pa. 394, 745 A.2d 606, 611 (2000). Defendant Sheed argues that Plaintiff became aware of the "transaction," at the latest, by the June 29, 2007 closing. (*Doc. No. 18.*) Plaintiff alleges, however, that: (1) during the closing, Buckman told him that by signing the paperwork, Plaintiff was authorizing the buyback loan they had discussed; (2) Plaintiff never received any copies of the closing papers; (3) one to two weeks after the closing, Plaintiff received a check for $40,000 that he "believed to be proceeds from his loan"; and (4) Plaintiff was at this time residing in his home and

making home repairs with his "loan proceeds." (*Doc. No. 9 at 11–14.*) Accordingly, there is a material factual dispute as to when Plaintiff should have discovered his injuries.

Once again, Defendants have not, at this early stage, shown that Plaintiff's tort claims are time-barred. *See Cooper v. Sirota,* 37 Fed.Appx. 46, 49 (3d Cir.2002) ("The time when an injured party should reasonably be aware of the injury is usually an issue of fact for the jury. Only when the facts are so clear that reasonable minds cannot disagree may a Court treat the commencement of the statute of limitations as a matter of law." (citing *Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 587 A.2d 727, 732 (1991))); *Meijer, Inc. v. 3M,* No. 04–Cv–5871, 2005 WL 1660188, at *2 (E.D.Pa. July 13, 2005) ("The defendant bears a heavy burden in seeking to establish that the challenged claims are barred as a matter of law."). Accordingly, I will deny without prejudice Sheed and ALT's Motion to Dismiss Plaintiff's tort claims as untimely.

### 4. Stating a claim

Defendant Sheed argues that Plaintiff has failed to state RICO claims (Counts I and II). Defendant ALT argues that Plaintiff has failed to state fraud (Count III), UTPCPL (Count IV), and negligence (Count V) claims. Defendant Residential argues that Plaintiff has failed to state RESPA (Count V) and quiet title (Count XI) claims. I do not agree.

### a. RICO (Counts I and II)

In Count I, Plaintiff alleges that four Defendants—not including Sheed (who nonetheless moves to dismiss it)—violated 18 U.S.C. § 1962(c), which makes it "unlawful for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (2006). To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir.2002) (internal quotation marks omitted). An "enterprise" need not be a legal entity; it can be a "group of individuals associated in fact." 18 U.S.C. § 1961(4). "Pattern of racketeering activity" means "at least two acts of racketeering activity, one of which occurred after [March 9, 2006—the statute's effective date] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Id.* § 1961(5). Racketeering activity is defined "by a list of criminal activities that constitute predicate acts," and includes mail and wire fraud. *Warden*, 288 F.3d at 114; *see also* § 1961(1). Where a plaintiff alleges mail or wire fraud as predicate acts, he must satisfy Rule 9(b)'s heightened pleading requirement. *Warden*, 288 F.3d at 114; Fed.R.Civ.P. 9(b).

▪ Here, Plaintiff alleges that Buckman, Fresh Start, Salvatore Esposito, and American One formed an "association-in-fact" with a "common purpose . . . to defraud financially distressed homeowners." (*Doc. No. 9 at 15.*) Plaintiff alleges that the enterprise "acquired at least 13 separate deeds in its scheme." (*Id.*) The enterprise's activities affected interstate commerce because its members are from New Jersey, they conspired to defraud Pennsylvania homeowners, and they "used a series of state and national mortgage companies to fund the scheme." (*Id.* at 16.)

Plaintiff alleges predicate acts of mail and wire fraud from 2006 to 2010 based on the enterprise's interstate phone calls to solicit loans from Plaintiff and at least twelve other victims, its transmission of loan statements via interstate faxes, and its wiring of proceeds from the sales of the victims' homes. Plaintiff details how the enterprise allegedly defrauded him (through mail and wire communications) into believing that he was securing a home improvement loan when he actually was relinquishing title to his home: Beginning in July 2006, Sheed and Buckman contacted Plaintiff by telephone—using information that they found on the Internet—to offer Plaintiff a "buyback loan." Buckman explained that to obtain the loan, Plaintiff would need to add an "investor" to his deed, and that after one year, the loan would be refinanced and Plaintiff's property would be returned to him in his name only. In October 2006, Buckman sent Plaintiff a letter to confirm the "refinancing" agreement they had discussed. In June 2007, Buckman called Plaintiff to tell him he had to attend a "closing" where Plaintiff ultimately signed away title and equity in his home. (*Doc. No. 9 at 7–14.*)

In these circumstances, it is apparent that Plaintiff has stated a claim under 18 U.S.C. § 1962(c).

▪ Defendant Sheed also seeks dismissal of Count II, in which Plaintiff alleges that Sheed and seven others conspired to violate 18 U.S.C. § 1962(c), in violation of § 1962(d). (*Doc. No. 9 at 20.*) To state a claim for RICO conspiracy, a plaintiff must allege that "Defendant intended 'to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.'" *See Contawe v. Crescent Heights of Am., Inc.*, No. 04–CV–2304, 2004 WL 2244538, at *1 (E.D.Pa. Oct. 1, 2004) (quoting *Salinas v. United States*, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)).

▪ Here, Plaintiff alleges that Sheed was "one of the front persons for the con-

spiracy," that she was the first person to tell Plaintiff that her company could issue him a "buyback loan," and that she "made numerous false and deceptive representations to [him]" about the loan through phone calls and mailings to Plaintiff. (*Doc. No. 9 at 20*); *see also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) ("The allegations must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." (internal quotation marks omitted)). It is immaterial that Plaintiff has not alleged that Sheed herself violated § 1962(c). *See Contawe*, 2004 WL 2244538, at *1 ("A defendant need not himself be charged with a substantive RICO violation to face § 1962(d) liability, as long as the plaintiff has adequately pled substantive claims against the defendant's co-conspirators." (citing *Salinas*, 522 U.S. at 63, 118 S.Ct. 469)). Moreover, Sheed need not have "agreed to the commission of [at least two] predicate acts." (*Doc. No. 18*); *see Salinas*, 522 U.S. at 63, 118 S.Ct. 469 ("The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense."); *Smith v. Berg*, 247 F.3d 532, 539 (3d Cir. 2001) ("[T]he question of what constitutes a violation of section 1962(d) continues to be defined under and governed by *Salinas*.").

Plaintiff thus has stated a claim for RICO conspiracy against Defendant Sheed.

### b. UTPCPL (Count IV) and tort claims

Defendant ALT argues that the Economic Loss Doctrine bars Plaintiff's UTPCPL and tort claims because they arise "directly out of his contractual claims" with Defendants *other than* ALT,

and Plaintiff has alleged "strictly economic damages." (*Doc. No. 78 at 13*.) Plaintiff responds that the gravamen of this case is fraud, and that any contracts mentioned in the Amended Complaint were merely "tools of a much larger fraud." Plaintiff argues that he has alleged "more than economic damages, in that [he] lost title to, and the right to freely live in, his home." (*Id.* at 15.)

The Economic Loss Doctrine is intended to prohibit a plaintiff from "recovering in tort economic losses to which [his] entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995). "No cause of action exists for negligence that causes only economic loss." *Aikens v. Baltimore and Ohio R. Co.*, 348 Pa.Super. 17, 501 A.2d 277, 279 (1985).

Here, Plaintiff alleges that he was a victim of a criminal conspiracy to defraud him and others out of title to their homes and to steal their home equity. He never had a contract with ALT, so a breach of contract claim will afford him no remedy. *See M & M Stone Co. v. Pa, Dep't of Envt'l Protection*, 07–CV–4784, 2008 WL 4467176, at *28 (E.D.Pa. Sept. 29, 2008) ("[A]pplications of the economic loss doctrine have generally been limited to losses which flow from the termination of a contract."). Finally, Plaintiff seeks something in addition to monetary damages: a declaration that he owns his home free from encumbrances and that he is "entitled to the quiet and peaceful possession of the Property." (*Doc. No. 9 at 33*.) In these circumstances, the Economic Loss Doctrine does not bar Plaintiff's claims against ALT.

ALT next argues that Plaintiff fails to state a claim under UTPCPL because he does not allege one of the twenty-one "unfair or deceptive practices" listed in

the statute. ALT also contends that Plaintiff has not established how ALT made an affirmative misrepresentation, which is required to state a claim under UTPCPL. I disagree.

■ To state a UTPCPL claim, Plaintiff must allege common-law fraud: "(1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance ..., and (6) injury ... proximately caused by the reliance." *Coleman v. Commonwealth Land Title Ins. Co.*, 684 F.Supp.2d 595, 619 (E.D.Pa. 2010). Fraud must be pled with particularity. *Rock v. Voshell*, 397 F.Supp.2d 616, 622–25 (E.D.Pa.2005).

Plaintiff alleges that Defendants "represented the transaction ... as having characteristics, uses and benefits that it did not have"—one of the enumerated "unfair and deceptive acts." (*Doc. No. 9 at 24*); *see* 73 P.S. § 201–2(4)(v). He also alleges that Defendants "engaged in fraudulent and deceptive conduct" that "created a likelihood of confusion or misunderstanding" and caused him "ascertainable loss" in the form of a "lien encumbering his home, as well as the loss of title to his home." (*Doc. No. 9 at 24.*) He alleges that ALT "served as the settlement and title agent for the transaction," hosted the closing, and accepted fees "for closing the loan," even though Buckman actually conducted the closing. (*Doc. No. 9 at 10*); *see* 73 P.S. § 201–2(4)(ii) (listing as one of the "unfair or deceptive acts or practices" "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services"). Plaintiff also alleges that ALT prepared two checks: one for $40,000 which was given to Plaintiff, and another for nearly $60,000 which ALT gave to Buckman who kept it, and that this check-

splitting "scheme" was part of a "pattern" of "home theft." (*Doc. No. 9 at 13.*)

I find that Plaintiff adequately has stated a claim under UTPCPL. *See Coleman*, 684 F.Supp.2d at 619 ("[J]ustifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.").

### c. RESPA (Count V) and Quiet Title (Count XI)

■ Defendant Residential argues that Plaintiff—as the seller of his property—"is not a protected party under RESPA." (*Doc. No. 60 at ¶ 44.*) Plaintiff responds that § 2607 applies equally to sellers of real property. (*Doc. No. 63 at 8.*) Plaintiff is correct.

The language of RESPA's anti-kickback and fee-splitting provisions does not limit the statute's application to home buyers. *See* 12 U.S.C. § 2607(a) (2006) ("No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding ... that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."); § 2607(b) ("No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."); § 2607(d)(2) ("*Any person or persons* who violate the prohibitions or limitations of this section shall be jointly and severally liable *to the person or persons charged* for the settlement service involved in the violation ....") (emphasis added). Accordingly, the courts have not limited the statute's application to buyers. *Kahrer v. Ameriquest Mortg. Co.*, 418 F.Supp.2d 748,

751 (W.D.Pa.2006) ("RESPA was enacted, in part, to provide home buyers and sellers with 'more effective advance disclosure' of settlement costs and to eliminate kickback or referral fees that 'tend to increase unnecessarily the costs of certain settlement services.' " (quoting 12 U.S.C. § 2601(b)(1), (2))); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 621 (E.D.Pa.1994) ("Section 8 prohibits kickbacks and unearned fees, and allows a person charged for the unauthorized disbursement to bring a cause of action for treble damages." (citing 12 U.S.C. § 2607(d))).

Accordingly, I will deny Residential's Motion to Dismiss Plaintiff's RESPA claim.

Residential next argues that Plaintiff's quiet title claim cannot stand in the face of Plaintiff's "admission" (i.e., Plaintiff's motion to sell the Keystone Street property in Bankruptcy Court) that the Foxworths own the property. (*Doc. No. 60.*) Plaintiff responds that he is not disputing that he sold his home; he is asking me to void that sale because of the underlying fraud. (*Doc. No. 63 at 14.*)

■■■ Pennsylvania law allows a plaintiff to bring an action "to determine any right, lien, title or interest in the land" where an ejectment action will not lie. Pa. R. Civ. P. 1061(b)(2). "Whether or not the property was fraudulently conveyed ... is an issue intrinsically intertwined with the determination of who is the rightful owner of the property." *In re Kovalchick,* 371 B.R. 54, 58 (Bkrtcy.M.D.Pa.2006).

Accordingly, I will deny Residential's Motion to Dismiss Plaintiff's quiet title claim.

5. Third Party Complaint

ALT asks for leave to file a Third–Party Complaint within fourteen days of the issuance of this Order. Plaintiff does not object to this request. Accordingly, I will allow ALT to file a Third–Party Complaint.

## IV. CONCLUSION

**AND NOW,** this 13th day of April, 2011, it is hereby **ORDERED** as follows:

1) Defendant Joyce Sheed's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (*Case No. 10–3128, Doc. No. 18* ) is **DENIED with prejudice** as to Counts I, II, and IV, and **DENIED without prejudice** as to Counts III, VI, IX, and X.

2) Defendant Residential Credit Solutions' Motion to Dismiss (*Case No. 10–687, Doc. No. 60* ) is **DENIED without prejudice** insofar as Residential argues that Count V is time-barred. Residential's Motion (*Doc. No. 60* ) is otherwise **DENIED with prejudice.**

3) Defendant Associates Land Transfer, LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (*Doc. No. 64* ) is **DENIED without prejudice** insofar as ALT argues that Counts III, VI, V, VIII, IX, and X are time-barred. ALT's Motion (*Doc. No. 64* ) is otherwise **DENIED with prejudice.**

4) Defendants Sheed, Residential, and ALT shall, by **April 22, 2011,** file Answers to Plaintiff's Amended Complaint. Defendant ALT may file a Third Party Complaint no later than **April 27, 2011.**

**IT IS SO ORDERED.**